# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 96-1420

_____

United States of America,    *
                             *
        Appellee,            *
                             * Appeal   from   the   United
States
    v.                       * District Court for the
                             * Western    District    of
Missouri.
Alfredo Baca-Valenzuela,     *
also known as Alfredo V. Baca,                    *
                             *
        Appellant.           *

_____

Submitted:

June 11, 1996

Filed: July 7, 1997

_____

Before MAGILL, Circuit Judge,[1] HENLEY, Senior Circuit
    Judge, and DOTY, District Judge.[2]

_____

[1]The Honorable Frank J. Magill was a Circuit Judge in active service at the time this case was submitted. He assumed senior status on April 1, 1997, before this opinion was filed.

[2]The Honorable David S. Doty, United States District Judge for the District of Minnesota, sitting by designation.

_____

HENLEY, Senior Circuit Judge.

Alfredo Baca-Valenzuela was indicted on one count of illegally reentering the United States after being deported subsequent to conviction of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) & (b)(2). Baca-Valenzuela pleaded guilty and was sentenced by the district court [3] to 51 months in prison, three years supervised release, and a special assessment fine of $50.00. In his plea agreement, Baca-Valenzuela reserved the right to contest several rulings of the district court. On this appeal, Baca-Valenzuela raises four challenges to his conviction and sentence. Finding no merit to any of these challenges, we affirm.

**Background**

Consideration of the claims raised here requires a brief review of events surrounding Baca-Valenzuela's earlier federal conviction in 1987, his deportation from the United States in 1992, as well as the 1995 conviction and sentence from which the present appeal is taken.

Sometime in 1986 (or before) Baca-Valenzuela illegally entered the United States for the first time.

In April 1987, Baca-Valenzuela was convicted in the United States District Court for the District of Arizona for aiding and abetting the possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2. He was sentenced to ten

---

[3]The Honorable D. Brook Bartlett, Chief Judge, United States District Court for the Western District of Missouri.

years in prison.

In 1987, upon learning of the conviction, the Immigration and Naturalization Service (INS) issued to Baca-Valenzuela an Order to Show Cause (why Baca-Valenzuela should not be deported) and Notice of Hearing. The INS, however, took no

further action on this Order to Show Cause.

At the time of the Arizona drug charge in 1987, conviction of a felony -- such as the controlled substances offense for which Baca-Valenzuela was arrested -- was a deportable offense. 8 U.S. C. § 1251(a)(4) (1987). Reentry into the United States after deportation carried a maximum penalty of two years in prison. 8 U.S.C.§ 1326 (1987)

While Baca-Valenzuela was imprisoned, Congress passed statutes in 1988 and 1990 amending the relevant provisions on illegal reentry after deportation.

First, the Anti-Drug Abuse Act of 1988 (1988 Act) amended the Immigration and Nationality Act to provide for a new maximum penalty of 15 years in prison for an alien convicted of reentry after having been deported subsequent to commission of an "aggravated felony." Pub. L. No. 100-690, § 7345(b)(2), 102 Stat. 4181, 4471(1988), codified as amended at 8 U.S.C. § 1326(b) (1988).

The Act also added a provision which defined the new term "aggravated felony" as including "murder, any drug trafficking crime as defined in section 924(c)(2) of title 18, United States Code, or any illicit trafficking in any firearms or destructive devices as defined in section 921 of such title, or any attempt or conspiracy to commit any such act, committed within the United States." Pub. L. No. 100-690, § 7342, 102 Stat. 4181, 4469-70 (1988), codified as amended at 8 U.S.C. § 1101(a)(43)(1988).

Section 7345(b) of the 1988 Act provided that the

amendments setting forth enhanced penalties for aliens who illegally reentered the United States after conviction of a felony or aggravated felony "shall apply to any alien who enters, attempts to enter, or is found in, the United States on or after the date of the enactment of this Act [November 18, 1988]." Pub. L. No. 100-690, § 7345(b), 102 Stat. 4181, 4471 (1988). However, the Act did not specifically address the question whether crimes committed before the effective date should be counted as aggravated felonies for purposes of the

new enhanced penalties.

Second, in the Immigration Act of 1990 (1990 Act), Congress again addressed the deportation of aggravated felons and their punishment for illegal reentry. Section 602 of the 1990 Act amended 8 U.S.C. § 1251 to provide specifically that conviction of an aggravated felony was grounds for deportation. Pub. L. No. 101-649, § 620(a)(2)(A)(iii), 104 Stat. 4978, 5080(1990). However, by its terms, Section 602 of the 1990 Act did not apply to deportation proceedings for which notice was provided to the alien before March 1, 1991. Pub. L. No. 101-649, § 602(d), 104 Stat. 4978, 5082 (1990).

Section 501 of the 1990 Act also substantially expanded the definition of "aggravated felony" to include not only any drug trafficking crime under § 924(c)(2) but also "any illicit trafficking in any controlled substance (as defined in section 102 of the Controlled Substances Act" as well as certain other money laundering and violent offenses. Immigration Act of 1990, Pub. L. No. 101-649, § 501(a)(2), 104 Stat. 4978, 5048 (1990), codified as amended at 8 U.S.C. § 1101(a)(43) (1990).[4]

---

[4]After the 1990 amendment, Section 1101(a)(43) provided in full:

The term "aggravated felony" means murder, <u>any illicit trafficking in any controlled substance (as defined in section 802 of Title 21), including any drug trafficking crime as defined in section 924(c)(2) of Title 18</u>, or any illicit trafficking in any firearms or destructive devices as defined in section 921 of such title, any offense described in section 1956 of Title 18 (relating to laundering of monetary instruments), or any crime of violence (as defined in section 16 of Title 18, not including a purely political offense) for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least 5 years, or any attempt or

The effective date provision in the 1990 Act stated that it would "apply to offenses committed on or after the date of the enactment of this Act [November 29, 1990]" except that the amendment expanding the definition of aggravated felony to include illicit trafficking in any controlled substance would "be effective as if included in the enactment of section 7342 of the Anti-Drug Abuse Act of 1988."  Pub. L. No. 101-649, § 501(b), 104 Stat. 4978, 5048(1990).

Thus, after the 1988 and 1990 amendments, a controlled substances offense, such as the one Baca-Valenzuela had been convicted of in 1987, was classified as an aggravated felony and the maximum penalty for illegal reentry into the United States after deportation for such an offense was increased from two to 15 years.[5]

One additional change in law occurred while Baca-Valenzuela was imprisoned.  Effective November 1, 1991, the United States Sentencing Commission amended Sentencing Guideline Section 2L1.2 by the addition of a new subsection (b)(2), providing for a 16 level increase in the base offense level of a defendant who illegally

conspiracy to commit any such act.  Such term applies to offenses described in the previous sentence whether in violation of Federal or State law and also applies to offenses described in the previous sentence in violation of foreign law for which the term of imprisonment was completed within the previous 15 years.

8 U.S.C. § 1101(a)(43) (1990) (emphasis supplied).

[5]Another amendment in 1994 further increased the penalty for unauthorized reentry after deportation subsequent to an aggravated felony to 20 years in prison. Pub. L. No. 103-322, § 130001(b)(2), 108 Stat. 1796, 2023 (1994)

reentered the United States after having been previously deported following conviction of an aggravated felony. U.S.S.G. § 2L1.2(b)(2).[6]

---

[6]U.S.S.G. § 2L1.2 provides a base offense level of eight for illegal reentry into the United States.  Subsection (b) provides:

> (b) Specific Offense Characteristics.  If more than one applies, use the greater:
>
>> (1) If the defendant previously was deported after a conviction for a felony, other than a felony involving violation of the immigration laws, increase by 4 levels.
>>> (2) If the defendant previously was deported after a conviction for an aggravated felony, increase by 16 levels.

U.S.S.G. § 2L1.2(b) (emphasis supplied).

The Application Notes to this Section explicitly reference the definition of aggravated felony in 18 U.S.C. § 1101(a)(43) and provide in relevant part that an "aggravated felony" includes "any illicit trafficking in any controlled substance (as defined in 21 U.S.C. § 802), including any drug trafficking crime as defined in 18 U.S.C. § 924(c)(2)." U.S.S.G. § 2L1.2 , comment. (n. 7 ).

In 1992, as the date for Baca-Valenzuela's release from prison neared, the INS canceled its 1987 Order to Show Cause and substituted a new Order to Show Cause citing the enhanced penalties provided in the amended Immigration and Nationality Act for aliens convicted of an "aggravated felony." Then, upon his release from prison in 1992, Baca-Valenzuela was detained by the INS pending deportation. On October 14, 1992, an immigration judge ordered Baca-Valenzuela deported pursuant to Section 241(a)(2)(A)(iii) of the Immigration and Nationality Act due to his status as an alien with a prior conviction for an aggravated felony. 8 U.S.C. §1251(a)(2)(A)(iii). Baca-Valenzuela did not file a direct appeal of the deportation order and was then deported.

In 1995, Baca-Valenzuela was arrested in Cooper County, Missouri, and charged under Missouri state law with possession of a controlled substance. On March 13, 1995, Baca-Valenzuela was convicted of that offense and fined $5000.00. That same day, Missouri officials turned him over to the custody of the INS.

On March 29, 1995, Baca-Valenzuela was indicted by a federal grand jury in the Western District of Missouri on one count of reentering the United States after having been deported subsequent to an aggravated felony, in violation of 8 U.S.C. §§ 1326(a)(1)&(2) and (b)(2).[7]

_____

[7] Title 8 U.S.C. §§1326(a) and (b) provide:

(a) Subject to subsection (b) of this section, <u>any alien who</u> --

    (1) <u>has been arrested and deported or excluded and deported, and thereafter</u>

Baca-Valenzuela moved to dismiss the indictment. He raised several claims challenging the application of the Immigration and Nationality Act, as amended, to his

---

      (2) <u>enters, attempts to enter, or is at any time found in, the United States</u>, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

(b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection --

      (1) whose deportation was subsequent to a conviction for commission or three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 10 years, or both; or

      (2) <u>whose deportation was subsequent to a conviction for commission of an aggravated felony</u>, such alien <u>shall be fined under such Title, imprisoned not more than 20 years, or both.</u>

8 U.S.C. §§ 1326 (a), (b) (1997) (emphasis supplied).

We have previously held that Section 1326(b) does not state the elements of a separate crime but is rather a sentence enhancement provision setting forth greater punishment for offenders violating Section 1326(a) who have previously been deported subsequent to a conviction for a felony, subsection (b)(1), or an aggravated felony, subsection (b)(2). <u>United States v. Haggerty</u>, 85 F.3d 403, 405-406 (8th Cir. 1996).

-11-

conduct. The United States magistrate judge[8] rejected all challenges to the indictment. The district court adopted the recommendations of the magistrate judge and overruled the motion to dismiss the indictment. Baca-Valenzuela then pleaded guilty but reserved the right to pursue his legal challenges to the conviction and sentence on appeal.

On this appeal, Baca-Valenzuela raises four related challenges to his conviction and sentence for the illegal reentry offense.[9] First, Baca-Valenzuela contends that both his 1992 deportation and his 1995 conviction are invalid as a matter of statutory construction. He says that when he committed the underlying drug offense in 1987 that crime was not an "aggravated felony" and by its terms the 1990 statute did not intend retroactive application of the enhanced penalties for aggravated felonies. Second, appellant argues that, even assuming the 1990 statute meant to include in the expanded definition of "aggravated felony" crimes committed before its enactment, the statute as applied to him violates the ex post facto clause of the Constitution. Third, appellant urges that the 16 level upward enhancement of his sentence was invalid, because he was convicted only of "aiding and abetting" the drug offense rather than commission of the offense as a principal. Fourth, appellant claims that he was entitled to a downward

---

[8]The Honorable John T. Maughmer, Chief United States Magistrate Judge, United States District Court for the Western District of Missouri.

[9]Although Baca-Valenzuela's briefs label and order the issues somewhat differently, we believe that the four claims identified here better subsume the actual substance of the challenges set forth to his conviction and sentence both in the briefs and at oral argument.

departure in sentencing on grounds that the retroactive application of the sentence enhancement for prior conviction of an "aggravated felony" was not a factor the Sentencing Commission had taken into account when drafting the Sentencing Guidelines.

**Analysis**

<u>Statutory Construction of the Aggravated Felony Provision</u>

Baca-Valenzuela first contends that in drafting the Immigration and Nationality Act Congress did not intend to treat crimes committed before the 1988 and 1990 amendments as aggravated felonies for purposes of enhanced punishment. He argues that his 1987 drug offense was not an aggravated felony at the time of its commission or his conviction because no such category of offenses then existed. Further, Baca-Valenzuela maintains that there is no evidence that Congress intended retroactive application of the aggravated felony provision. Accordingly, argues Baca-Valenzuela, his 1992 deportation and 1995 conviction and sentence were flawed for being premised on a prior conviction which could not be correctly categorized as an aggravated felony.

Because Baca-Valenzuela challenges a ruling on a matter of law, <u>i.e.</u>, the interpretation of a statute -- the Immigration and Nationality Act, as amended -- we review the district court's decision de novo. <u>United States v. Crawford</u>, No. 96-2808, slip op. at 18 (8th Cir. June 23, 1997).

The baseline for interpreting a statute is always the "language of the statute itself," <u>United States v. James</u>, 478 U.S. 597, 604 (1986), for we "must give effect to the unambiguously expressed intent of Congress." <u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 843 (1984).

Baca-Valenzuela was convicted in 1987 of aiding and abetting the possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and 18

U.S.C. § 2.  This offense was a federal felony at the time of conviction for which Baca-Valenzuela was sentenced to ten years in prison.  Baca-Valenzuela's 1995 sentence for illegal reentry was enhanced on the theory that this 1987 conviction constituted "illicit trafficking in [a] controlled substance, as defined in Section 802 of Title 21," under the definition of "aggravated felony" in 8 U.S.C. § 1101(a)(43) as it had been expanded in 1990.

The starting point, then, for statutory interpretation in this case is the language of Section 501 of the 1990 amendment.[10] In particular, Section 501(a)(2) provided that the definition of an aggravated felony included "any illicit trafficking in any

---

[10]SEC. 501. AGGRAVATED FELONY DEFINITION.

(a)IN GENERAL. -- Paragraph (43) of section 101(a) (8 U.S.C. 1101(a)) is amended --

> (1) by aligning its left margin with the left margin of paragraph (42),
>
> (2) by inserting "any illicit trafficking in any controlled substance (as defined in section 102 of the Controlled Substances Act), including" after "murder,",
>
> (3) by inserting after "such title," the following: "any offense described in section 1956 of title 18, United States Code (relating to laundering of monetary instruments), or any crime of violence (as defined in section 16 of title 18, United States Code, not including a purely political offense) for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least 5 years, ",
>
> (4) by striking "committed within the United States",
>
> (5) by adding at the end the following: "Such term applies to offenses described in the previous sentence whether in violation of Federal or State law.", and
>
> (6) by inserting before the period of the sentence added by paragraph (5) the following: "and also applies to offenses described in the previous sentence in violation of foreign law for which the term of imprisonment was completed within the previous 15 years".

(b) EFFECTIVE DATE. -- The amendments made by subsection (a) shall apply to offenses committed on or after the date of the enactment of this Act [November 29, 1990], except that the amendments made by paragraphs (2) and (5) of subsection (a) shall be effective as if included in the enactment of section 7342 of the Anti-Drug Abuse Act of 1988.

Pub. L. No. 100-649, § 501, 104 Stat. at 5048.

controlled substance."  In addition, Congress stated in Section 501(b) that for the new offenses added in 1990 to the list of aggravated felonies in Section 501(a) -- money laundering

and crimes of violence -- only those committed after the effective date of the 1990 Act could serve to enhance a sentence for illegal reentry. However, Section 501(b) specifically provided with respect to the drug offenses in paragraph (a)(2) that the 1990 amendments were "effective as if included in the enactment of section 7342 of the Anti-Drug Abuse Act of 1988."

Thus, Congress stated explicitly that a money laundering offense or a crime of violence, for example, could not be the basis for an aggravated felony sentence enhancement unless committed on or after November 29, 1990. For drug offenses, however, Congress provided an effective date only indirectly by treating them "as if" they were included in the 1988 Act.

We must refer then to the language of the 1988 Act to determine its effective date (and by extension whether drug offenses committed before 1988 are aggravated felonies). Congress did not specifically state in the 1988 Act whether crimes committed before its passage could be counted as "aggravated felonies." Section 7342 of the 1988 Act defined "aggravated felony" as meaning "murder, any drug trafficking crime . . . , or any illicit trafficking in any firearms or destructive devices . . . ." But Section 7342 did not specify when such offenses must have occurred to constitute an aggravated felony.

Despite the absence of an explicit effective date provision in the "aggravated felony" definition, we believe it is clear by necessary implication from the language and design of the Act as a whole that Congress intended to include drug convictions prior to 1988.

-18-

First, the language of several substantive provisions of the 1988 Act which make use of the term "aggravated felony" would not make sense unless the term included pre-enactment convictions. And, it is, of course, axiomatic that we read the language of a statute so as to give effect to each word enacted by Congress. <u>Pelofsky v. Wallace</u>, 102 F.3d 350, 353 (8th Cir. 1996).

For example, we note that the 1988 Act provided that the enhanced penalties in 8 U.S.C. § 1326 for persons convicted of illegal reentry after deportation subsequent to an aggravated felony should "apply to any alien who enters, attempts to enter, or is found in, the United States on or after the date of the enactment of this Act." Pub. L. No. 100-690, § 7345(b), 102 Stat. at 4471. Because the enhanced penalties applied immediately on the date of enactment [November 18, 1988] to any alien who attempted to enter the United States (without consent after deportation subsequent to conviction for an aggravated felony), it seems clear that the aggravated felonies referred to must include those occurring before November 18, 1988. It would have been impossible for an alien entering, attempting to enter, or being found in the United States on that date to have a prior conviction for an aggravated felony if such aggravated felonies included only offenses committed after that date. Thus, the only interpretation of the definition of aggravated felony, 8 U.S.C. § 1101(a)(43), which would also give meaningful effect to this substantive provision employing the term, 8 U.S.C. § 1326(b), is that "aggravated felony" included pre-enactment convictions.[11]

---

[11]At least two other provisions of the 1988 Act make clear Congress' intent that the definition of "aggravated felony" should apply to pre-enactment convictions. Section 7346 set forth criminal penalties for those who aid or assist aliens (previously convicted of an aggravated felony and deported) in entering or remaining in the United States. Section 7346 specifically provided that it would apply "to any aid or assistance which occurs on or after the date of the enactment of this Act." Pub. L. No. 100-690, § 7346, 102 Stat. at 4471 (1988). As with Section 7345, it would make little sense for this substantive liability provision to apply immediately upon enactment unless the aggravated felonies to which it referred included those occurring before enactment. Similarly, Section 7349 provided a 10 year ban on reentry into the United States of aliens convicted of an aggravated felony. Congress expressly stated that this provision

Second, in several of the other substantive sections of the 1988 Act which used

_____

"shall apply to any alien convicted of an aggravated felony who seeks admission to the United States on or after the date of the enactment of this Act."  Pub. L. No. 100-690, § 7349, 102 Stat. at 4473(1988).

the term "aggravated felony" Congress explicitly limited the statute's application  to aliens convicted of aggravated felonies "on or after the date of the enactment."  Such provisions indicate that Congress knew how -- when it chose -- to restrict the disabilities arising from conviction of "aggravated felonies" to prospective crimes

only.  Moreover, such express limitation to future offenses would have been unnecessary and redundant if the definition of "aggravated felony" did not already include convictions prior to the effective date of the Act.

For example, Section 7343 of the 1988 Act provided that an alien convicted of an "aggravated felony" would be immediately deportable.  However, Section 7343 also stated that it applied only to an "alien who has been convicted, on or after the date of the enactment of this Act, of an aggravated felony."  If, as Baca-Valenzuela contends, the term aggravated felony as defined in 8 U.S.C. § 1101(a)(43) was meant by Congress to be restricted to post-enactment crimes, then that portion of Section 7343 making aliens subject to deportation only for prospective offenses would be redundant.[12]

Thus, it seems clear from the language of the 1988 Act and its design that "aggravated felony" as defined included crimes for which an alien was convicted prior to November 18, 1988.  This is the only interpretation of

---

[12]In two other sections of the 1988 Act a substantive provision regarding the deportation of aliens who commit an aggravated felony is explicitly limited to prospective crimes only.  See §§ 7344(b) ("Grounds of  Deportation") & 7347(c) ("Expedited Deportation Proceedings for Aliens Convicted of Aggravated Felonies"). Pub. L. No. 100-690, §§ 7344(b) & 7347(c), 102 Stat. at 4471, 4472(1988).

the statutory language which will both give effect to all the words Congress chose and recognize Congress' decisions to place temporal limitations on the effectiveness of some substantive provisions using the term "aggravated felony" but not others.

This reading of the statute is consistent with that of the other Courts of Appeals which have faced this issue. For example, in <u>United States v. Aranda-Hernandez</u>, 95

F.3d 977, 981-83 (10th Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 1314 (1997), an alien -- deported after conviction of a drug offense in 1984 -- was rearrested in 1994 and charged with illegal reentry after deportation subsequent to conviction of an aggravated felony.  He argued that under the effective dates of  the 1988 and 1990 amendments to the Immigration and Nationality Act his 1984 conviction could not be an aggravated felony.  The Tenth Circuit disagreed and held that the aggravated felony enhancement in Section 1326(b) applied to all covered drug offenses, regardless of the date committed.

Similarly, in <u>United States v. Adkins</u>, 102 F.3d 111 (4th Cir. 1996), the Fourth Circuit  upheld a conviction for reentry after deportation subsequent to an aggravated felony where the underlying drug offense occurred in January 1988, prior to the enactment of the 1988 and 1990 amendments.  <u>Accord</u>, <u>United States v. Troncoso</u>, 23 F. 3d 612 (4th Cir. 1994) (Section 1326(b) conviction based on January 1988 drug conviction affirmed), <u>cert. denied</u>, 513 U.S. 1116 (1995).  <u>See also</u> <u>Scheidemann v. INS</u>, 83 F.3d 1517 (3d Cir. 1996) (crimes are aggravated felonies for purposes of 8 U.S.C. § 1182(c) waiver of deportation "regardless of the conviction date").

Our conclusion that Baca-Valenzuela's 1987 conviction constitutes an aggravated felony for purposes of Section 1326(b) is also consistent with the interpretation of the Act by the Board of Immigration Appeals, the division of the Justice Department with technical expertise in interpretation of the immigration laws.  In <u>Matter of A-A-</u>, 20  I. & N. Dec. 492 (1992), for example, the Board held that an alien's request for discretionary waiver of inadmissibility under 8 U.S.C. § 1182(c) must be denied because such relief was barred for all aggravated felonies.  The Board held that the definition of aggravated felony attached retroactively to all convictions described in 8

U.S.C. § 1101(a)(43) "whether occurring before, on, or after November 18, 1988."

We believe that the recent decision by the Ninth Circuit in United States v. Gomez-Rodriquez, 96 F.3d 1262 (9th Cir. 1996), is not to the contrary. In Gomez-Rodriquez a unanimous court sitting en banc held that an alien's indictment for illegal

reentry after deportation subsequent to conviction for an aggravated felony must be dismissed where the underlying felony was a crime of violence -- assault with a deadly weapon -- which occurred before the definition of aggravated felony was expanded to include such crimes.[13] The court relied explicitly on the language of the 1990 amendment restricting the definition of aggravated felony to "offenses committed on or after the date of the enactment" of the 1990 Act for those new crimes (such as crimes of violence) added in 1990. 96 F.3d at 1264. We believe the necessary implication of the Ninth Circuit's reasoning is that for those other crimes included in the definition of aggravated felony (such as drug crimes), for which the 1990 Act provides no explicit limitation to prospective offenses only, the Act includes such offenses, whenever committed.

In sum, we conclude that based on the language of the Immigration and Nationality Act, as amended in 1988 and 1990, Congress intended Baca-Valenzuela's 1987 drug conviction to be treated as an aggravated felony for purposes of enhanced punishment under Section 1326(b).[14]

---

[13]But cf. United States v. Campbell, 94 F.3d 125 (4th Cir. 1996), cert. denied, 1997 WL 274271 (1997), where the Fourth Circuit explicitly disagreed with the Ninth Circuit and held that an enhanced sentence for illegal reentry applied where the underlying aggravated felony was manslaughter (i.e., a crime of violence) committed prior to the effective date of the 1990 Act.

[14]Having concluded that the substance of the claims Baca-Valenzuela raises in his attack on his 1995 conviction and sentence are without merit, we also affirm the district court's decision that the appellant has failed to satisfy the required threshold to raise the same claims in a collateral attack on the 1992 deportation order. See United States v. Torres-Sanchez, 68 F. 3d 227, 230 (8th Cir. 1995) ("In a section 1326 prosecution, the defendant may collaterally attack the underlying deportation proceedings and prevent the government from using them as a basis for conviction if (1) an error in the deportation proceedings rendered the proceedings fundamentally unfair in violation of due process, and (2) the error functionally deprived the alien of the right to judicial review.") (citing United States v. Mendoza-Lopez, 481 U.S. 828, 840 (1987)). Baca-Valenzuela cannot establish fundamental unfairness because he was

clearly deportable for his prior conviction of a felony even if his offense did not constitute an aggravated felony. Moreover, he has not established that the error, if any, had the effect of depriving him of judicial review of the deportation order. Rather, it appears, that Baca-Valenzuela was informed of his right to appeal the deportation order but declined to pursue an appeal.

Ex Post Facto

Next Baca-Valenzuela contends that if the statute does apply to his conduct it constitutes an invalid ex post facto law.

Article I, Section 9, of the Constitution provides that "No Bill of Attainder or ex post facto Law shall be passed." The Supreme Court has stated that the ex post facto clause bars laws that "retroactively alter the definition of crime or increase the punishment for criminal acts." California Dep't of Corrections v. Morales, 115 S. Ct. 1597, 1601 (1995). And, we have held that an ex post facto law is one that either makes criminal conduct that was legal when done or inflicts greater punishment for an offense than the law when the offense was committed. United States v. Crawford, No. 96-2808, slip op. at 12.

Baca-Valenzuela's ex post facto claim is based on the argument that he is being punished for 1987 conduct, under laws effective in 1988 and 1990. This contention rests on a misinterpretation of Section 1326. Our court -- as well as numerous other courts that have addressed the issue -- has indicated that the punishments set forth in Section 1326 are for the offense of reentry (after deportation and without consent from the Attorney General) not for the underlying criminal offense. United States v. Haggerty, 85 F.3d at 404-05. See also United States v. Saenz-Forero, 27 F.3d 1016, 1020 (5th Cir. 1994); United States v. Arzate-Numez, 18 F.3d 730, 735 (9th Cir. 1994). Accordingly, Baca-Valenzuela was punished for his recent illegal reentry of the United States -- sometime between his deportation in 1992 and his arrest in Missouri in 1995 -- well after the Immigration Act was amended -- and not for his 1987 drug offense.

Because Section 1326(b) is merely a sentence enhancement provision providing for greater punishment for certain offenders committing the instant offense -- <u>reentering or being found in the United States after deportation subsequent to an aggravated felony</u> -- it plainly is not an ex post facto law. As we have said, "[s]o long as the actual crime for which a defendant is being sentenced occurred after the effective date of the new statute, there is no ex post facto violation." <u>United States v. Farmer</u>, 73 F.3d 836, 841 (8th Cir. 1996) (quoting <u>United States v. Allen</u>, 886 F.2d 143, 146 (8th Cir. 1989)), <u>cert. denied</u>, 116 S. Ct. 2570 (1996).

Despite these clear principles, Baca-Valenzuela argues here that Section 1326(b) is an ex post facto law under the reasoning of <u>United States v. Davis</u>, 936 F.2d 352 (8th Cir. 1991), <u>cert. denied</u>, 503 U.S. 908 (1992). This argument is misplaced. In <u>Davis</u> the defendant was convicted of a felony. Later a new statute was passed barring felons from carrying firearms for ten years after their release from prison. The question was whether this new bar on firearms possession constituted an ex post facto law as applied to a person convicted of a felony prior to the enactment of the firearms statute. We concluded it was a forbidden ex post facto law, because, as applied, the new statute plainly increased the punishment for a past offense.

That is not the case here. Like other recidivist and career offender provisions in current law, Section 1326(b) imposed on Baca-Valenzuela a greater punishment because he had previously been convicted and deported. However, there is no doubt here that the crime Baca-Valenzuela was punished for was his illegal reentry and

-30-

residence in the United States in 1992-1995 and not his drug activities in 1987.  Section 1326(b) as applied to Baca-Valenzuela is not an ex post facto law.

## 16 Base Offense Level Sentence Enhancement

Baca-Valenzuela also challenges his sentence on grounds that he should not have received the 16 level offense enhancement for an "aggravated felony" because he was convicted of "aiding and abetting" cocaine possession rather than commission of the crime as a principal.

Section 2L1.2 of the Sentencing Guidelines provides that persons convicted of illegal reentry into the United States shall receive a base offense level of 8. Then subsection (b) provides that if the defendant was previously deported after conviction for an aggravated felony his base offense level should be increased by 16 levels. Accordingly, in calculating Baca-Valenzuela's sentence the magistrate judge started with a base offense level of 8, added 16 for the prior conviction of an aggravated felony, and deducted 3 for acceptance of responsibility for a total offense level of 21. With Baca-Valenzuela's criminal history category of III, that offense level corresponded to a sentence of 46-57 months and Baca-Valenzuela was sentenced to 51 months in prison.

Baca-Valenzuela contended in the district court that the 16 level enhancement for prior conviction of an aggravated felony was in error, because the crime of which he was convicted -- "aiding and abetting" the possession of cocaine with intent to distribute -- is not specifically listed as an aggravated felony in either the statute, 8 U.S.C. § 1101(a)(43), or the applicable guideline, U.S.S.G. § 2L1.2(b)(2). The district court, however, rejected this argument finding that under well-established principles of federal criminal law conviction of aiding and abetting an offense is the same as conviction of the offense as a principal.

We agree with the reasoning of the district court. A fundamental theory of American criminal law is that there is no offense of aiding and abetting or accomplice liability as such. Instead, accomplice liability is merely a means of determining which persons were closely enough related to the underlying offense to be prosecuted

and convicted of that offense.  Whether one is convicted as a principal or as an accomplice/aider and abettor, the crime of which he is guilty is the same: whatever is the underlying offense.  United States v. Simpson, 979 F.2d 1282, 1285 (8th Cir. 1992) (Magill, J.), cert. denied, 507 U.S. 943 (1993).

Here, Baca-Valenzuela's role in the 1987 drug offense was apparently such that the prosecutor chose to charge him with possession of cocaine with intent to distribute,

21 U.S.C. § 841(a)(1), as an aider and abettor under 18 U.S.C. § 2. Although convicted on a theory of accomplice liability, Baca-Valenzuela was nevertheless convicted and punished for the cocaine offense -- the same as if he had been the principal or only party involved in the conduct. Simpson, 979 F.2d at 1286. He properly received enhanced punishment based on this prior conviction. See United States v. Mitchell, 23 F.3d 1, 2-3 (1st Cir. 1994) (aiding and abetting a crime of violence is the same as commission of the crime as a principal for purposes of enhanced sentence). Simpson, 979 F.2d at 1285 (same).

The one case cited by Baca-Valenzuela as supporting his claim -- that Congress did not intend to include aiding and abetting as an aggravated felony -- is United States v. Mendoza-Figueroa, 28 F.3d 766 (8th Cir. 1994). In that case a panel of this court held that where the operative statute and sentencing guideline did not specifically include conspiracy as a basis for an enhanced punishment, Congress did not intend to cover conspiracies. The panel rejected the government's argument that the statutory language listing substantive drug offenses should be read as implicitly including conspiracy as well. However, the panel opinion was vacated and the court en banc held that conspiracy to distribute marijuana was a controlled substance offense for purposes of enhanced punishment. United States v. Mendoza-Figueroa, 65 F.3d 691 (8th Cir. 1995). In any event, Mendoza-Figueroa does not support the further proposition that such a statute should not be read to include aiding and abetting. Unlike accomplice liability, conspiracy is plainly a separate criminal offense; a person is guilty of the crime of conspiracy not of the underlying offense as a conspirator. See,

-34-

e.g., <u>United States v. Martin</u>, 867 F.2d 476 (8th Cir. 1989).

Accordingly, the district court correctly concluded that Baca-Valenzuela had been convicted of a crime involving "illicit trafficking in any controlled substance (as defined in 21 U.S.C. § 802)" under Sentencing Guideline Section 2L1.2. This crime is within the definition of aggravated felony in both the statute and the sentencing guideline and thus Baca-Valenzuela properly received an enhanced sentence based on his prior commission of the aggravated felony.

Downward Departure

Finally, Baca-Valenzuela contends that the district court erred in denying his request for a downward departure in his sentence. Baca-Valenzuela's theory was that in drafting the Sentencing Guidelines the Sentencing Commission did not anticipate that the sentence enhancement for an "aggravated felony" would be interpreted to include crimes committed before the sentence enhancement became law. Thus, he argued, a downward departure was required to avoid both unintended consequences and injustice. This argument is misplaced.

A district court may depart from a guidelines sentence if the court "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3552(b). According to the Supreme Court's recent decision in <u>Koon v. United States</u>, 116 S. Ct. 2035, 2046 (1996), the issue is whether "certain aspects of the case [are] unusual enough for it to fall outside he heartland of cases in the Guideline[s]."

As we have recently held, "[w]hen a district court correctly understands that it has the authority to depart on a particular basis from the guidelines, the 'court's discretionary decision not to depart . . . is unreviewable on appeal absent an unconstitutional motive.'" <u>United States v. Hernandez-Reyes</u>, No. 96-3548, slip op. at 3 (8th Cir. June 11, 1997), quoting, <u>United States v. Field</u>, No. 96-1590, slip op. at 9 (8th Cir. April 7, 1997). Baca-Valenzuela has certainly shown no

motive for the district court's rejection of his request for downward departure other than that his request was without legal merit.

Here, we do not believe that Baca-Valenzuela's substantive argument -- that the Sentencing Commission did not adequately take into account how the aggravated felony enhancement might be applied to a case like this -- has merit. But, in any event, it is clear that the district court fully understood the argument Baca-Valenzuela was

making and rejected it.[15]  In such circumstances, we decline to upset the well-reasoned decision of the sentencing judge.

Accordingly, for the reasons stated herein, the judgment of the district court is in all respects affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

---

[15]The court rejected Baca-Valenzuela's request for a downward departure, saying:

I see no basis for a request for a downward departure because it is clear to me that the Sentencing Commission contemplated the term aggravated felony and included it in its penalty structure for unlawfully entering or remaining in the United States, and that for the reasons that we've been discussing, the definition of aggravated felony, whether in the guidelines or in the statute, does not unfairly or unlawfully add to the penalty for past offenses.

It affects only the penalty for the current offense, and so I don't see any basis -- I mean, I think to give this defendant a downward departure because the offense that is determined to be an aggravated felony occurred in the past really makes no sense.  It doesn't, the Sentencing Commission clearly contemplated that, as did Congress.