# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1295
_____

United States of America

*Plaintiff - Appellee*

v.

Remberto Rivera

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville
_____

Submitted: January 13, 2023
Filed: August 10, 2023
_____

Before KELLY, ERICKSON, and STRAS, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Remberto Rivera pled guilty to possession of methamphetamine with intent to distribute. The district court sentenced him as a career offender to 168 months' imprisonment. Rivera appeals, claiming the district court[1] committed three

---

[1]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

reversible errors: (1) designating him as a career offender; (2) applying a two-level enhancement for possession of a dangerous weapon; and (3) applying a two-level enhancement for reckless endangerment in the course of fleeing from law enforcement. We affirm.

## I. BACKGROUND

In February 2020, a northwest Arkansas Drug Task Force ("Task Force") received a tip that Rivera was selling methamphetamine in northwest Arkansas. The Task Force also learned that Rivera was on parole and his conditions allowed warrantless searches. While conducting surveillance on March 3, 2020, at a motel known for drug activity, the Task Force observed Rivera, carrying a backpack, enter the parking lot. Task Force investigators approached Rivera, identified themselves, and asked for his identification. When Rivera refused to identify himself, claiming to have no identification, investigators informed him that they knew who he was, that he was on parole, that he had signed a warrantless search waiver, and that they suspected him of trafficking methamphetamine. After arresting Rivera for obstruction based on his refusal to provide his name, investigators recovered his driver's license from his pocket.

Investigators searched Rivera's backpack and found 15.9 grams of marijuana, 114.4 grams of methamphetamine, a digital scale, a pipe with suspected methamphetamine residue, clear plastic baggies, and more than $3,000 in cash. The investigators also seized two phones from Rivera that contained text messages indicating Rivera was engaged in drug trafficking. Rivera was taken into custody and later released on bond.

On May 16, 2020, members of the Fayetteville Police Department ("FPD") observed Rivera at a residence under surveillance because of suspected drug activity. FPD officers followed Rivera's vehicle and, after multiple turns onto different streets, Rivera parked and exited the car with a companion. Rivera's companion

eventually admitted that they had spoken to a known drug distributor at the drug house.

Rivera told law enforcement that he owned the car but when the police asked for permission to search the car, Rivera claimed he was not the owner. Even though Rivera refused to give permission to search the vehicle, officers informed him they were going to search the vehicle without his consent because he had signed a parole search waiver. Rivera was initially agitated and became more visibly upset as contact with the officers progressed. Rivera questioned why he was being stopped, and exhibited signs that he might flee, such as looking around and scanning the area.

When an officer attempted to handcuff him, Rivera, who had been seated on the curb, stood up and attempted to run. Officers grabbed Rivera and took him to the ground. A chaotic struggle ensued during which Rivera attempted to strike one officer with his fist, attempted to choke another officer, grabbed at the handcuffs, and eventually succeeded in taking a taser off one of the officers. Rivera then grabbed at another officer's duty weapon. Eventually, two bystanders came to the aid of the officers and Rivera was subdued and taken into custody.

When officers searched Rivera's car, they found a loaded handgun and a backpack containing a locked safe. Inside the safe, officers discovered a second firearm, ammunition, plastic baggies, and two digital scales. Another backpack contained a glass pipe with suspected methamphetamine residue and more small plastic baggies.

Rivera pled guilty to possession of methamphetamine with intent to distribute. Because Rivera had prior Arkansas convictions for Accomplice to Robbery and Possession of Methamphetamine with Purpose to Deliver, he was found to be a career offender. In calculating Rivera's advisory Sentencing Guidelines range, the district court applied a two-level increase for possession of a firearm in connection with another felony offense and a two-level increase for reckless endangerment during flight. He challenges each of those conclusions on appeal.

## II.  DISCUSSION

We review a district court's application of the Sentencing Guidelines *de novo*, and its factual findings for clear error.  United States v. Anderson, 618 F.3d 873, 879 (8th Cir. 2010) (citation omitted).

### A. Career Offender Status

Rivera asserts the district court erred when it classified him as a career offender within the meaning of § 4B1.1 of the United States Sentencing Guidelines. Under § 4B1.1(a), a defendant qualifies as a "career offender" if he has at least two prior felony convictions for either a crime of violence or a controlled substance offense, is at least eighteen years old at the time of the offense, and the instant felony offense is a crime of violence or controlled substance offense.  Section 4B1.2(a) defines a "crime of violence" as:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that-
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

Rivera acknowledges that we have found Arkansas robbery to fit within the generic federal definition of robbery and to qualify as a "crime of violence" under the enumerated offenses clause of § 4B1.2(a)(2).  See United States v. Stovall, 921 F.3d 758, 761 (8th Cir. 2019).  He contends, however, that his prior Arkansas conviction for Accomplice to Robbery does not qualify as a predicate to support the career offender enhancement because it is an inchoate offense not listed in the Guidelines.  Rivera claims that because the Guidelines fail to include aiding and abetting offenses, the commentary impermissibly expands the definition of "crime of violence" beyond what the text allows.  See U.S.S.G. § 4.B1.2 cmt.  n. 1.

-4-

In Stinson v. United States, 508 U.S. 36 (1993), the Supreme Court held that the Guidelines commentary was to "be treated as an agency's interpretation of its own legislative rule." Id. at 44. Based on Stinson, this Court decided the commentary was a reasonable interpretation of the Guidelines and was within the Sentencing Commission's statutory authority. United States v. Mendoza-Figueroa, 65 F.3d 691, 693-94 (8th Cir. 1995) (en banc).

The law has undergone significant developments since Stinson was decided, some of which may cast doubt on our precedent in Mendoza-Figueroa. For instance, in 2019, the Supreme Court, in Kisor v. Wilkie, 139 S. Ct. 2400 (2019), held that deference to an agency's own interpretation is to be afforded only when (1) the law is "genuinely ambiguous"; (2) the agency's proposed interpretation is reasonable; (3) the interpretation is the agency's "authoritative" or "official position"; (4) the regulatory interpretation implicates the agency's substantive expertise; and (5) the agency's regulatory interpretation reflects "fair and considered judgment." Id. at 2415-17 (citations omitted). The Kisor Court cautioned lower courts to "carefully consider the text, structure, history, and purpose of a regulation, in all the ways it would if it had no agency to fall back on." Id. at 2415 (cleaned up).

After Kisor, several of our sister circuits revisited the deference to be given to the Guidelines commentary and overruled their prior precedents, concluding the definition of controlled substance offenses in § 4B1.2(b) does not include inchoate crimes. See, e.g., United States v. Dupree, 57 F.4th 1269, 1279 (11th Cir. 2023) (en banc); United States v. Nasir, 17 F.4th 459, 472 (3d Cir. 2021) (en banc); United States v. Castillo, 69 F.4th 648, 664 (9th Cir. 2023). Recently, the Fifth Circuit, applying Stinson deference, reaffirmed its "longstanding precedent that inchoate offenses like conspiracy are included in the definition of 'controlled substance offense' while explaining, in the alternative, it would also defer to the commentary under Kisor. United States v. Vargas, __ F.4th __, 2023 WL 4702277, *19 (5th Cir. July 24, 2023) (en banc). A few weeks before Kisor was decided, the Sixth Circuit abrogated its precedent and found the Sentencing Commission had no power to add

attempt crimes to the list of offenses in § 4B1.2(b) through commentary. United States v. Havis, 927 F.3d 382, 386-87 (6th Cir. 2019). In reaching this conclusion, the Sixth Circuit asserted that, unlike the Guidelines, the "commentary to the Guidelines never passes through the gauntlets of congressional review or notice and comment." Id. at 386. Similar reasoning has been employed by our sister circuits that have determined Kisor applies to the Guidelines' commentary. But there are grounds for questioning this reasoning.

The United States Sentencing Commission routinely publishes notice of its intention to amend the commentary and application notes to the Guidelines. See e.g., U.S. Sent. Comm., Notice of Submission to Congress of Amendments to the Sentencing Guidelines Effective November 1, 2023, and Request for Comment, 88 Fed. Reg. 28254 et seq. (May 3, 2023). Nor is there a basis to believe Congress has treated the commentary differently than the black-letter Guidelines. History reflects that Congress has actively overseen the substance of the commentary to the Guidelines. By way of example, in 2003, Congress amended certain commentary provisions as part of the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, 117 Stat. 650. Section 401(g) of the PROTECT Act directly amended Application Note 6 and the background commentary to U.S.S.G. § 3E1.1 (Acceptance of Responsibility), and Section 401(i)(1)(A) of the PROTECT Act directly amended Application Note 4(b)(i) to U.S.S.G. § 4B1.5 (Repeat and Dangerous Sex Offender Against Minors).

On other occasions, Congress has instructed the Sentencing Commission to reevaluate commentary in light of various policy concerns. See Artists' Rights and Theft Prevention Act of 2005, Pub. L. No. 109-9, § 105(c)(3), 119 Stat. 218 (2005) (instructing the Sentencing Commission to, among other things, "determine whether the scope of 'uploading' set forth in application note 3 of section 2B5.3 of the Federal sentencing guidelines is adequate to address the loss attributable to people who, without authorization, broadly distribute copyrighted works over the Internet"); see also Stop Counterfeiting in Manufactured Goods Act, Pub. L. No.

109-181, § 1(c)(3), 120 Stat. 285 (2006) (instructing the Sentencing Commission to "determine whether the definition of 'infringement amount' set forth in application note 2 of section 2B5.3 of the Federal sentencing guidelines is adequate to address" certain situations).

The First and Second Circuits have expressed a desire to follow the lead of these circuits but found themselves bound by their precedent.  See United States v. Lewis, 963 F.3d 16, 24-25 (1st Cir. 2020); United States v. Tabb, 949 F.3d 81, 87 (2d Cir. 2020).  Still other circuits have declined to find that Kisor alters the standard for the deference owed to the Guidelines commentary.  See, e.g., United States v. Maloid, 71 F.4th 795, 803-817 (10th Cir. 2023) (concluding Kisor did not change the standard of deference given to the Guidelines' commentary, and the district court did not plainly err in applying a modern definition of conspiracy in defining generic conspiracy under the Guidelines); United States v. Moses, 23 F.4th 347, 357 (4th Cir. 2022) (stating since Kisor did not purport to overrule Stinson, it is not the court's role to find that it did), cert. denied, 143 S. Ct. 640, 640 (2023), contra United States v. Campbell, 22 F.4th 438, 445 (4th Cir. 2022) (noting the traditional tools for statutory construction do not support the government's contention that the court should defer to the commentary); United States v. Smith, 989 F.3d 575, 585-86 (7th Cir. 2021) (reaffirming its precedent that the Guidelines commentary is authoritative); United States v. Babcock, 40 F.4th 1172, 1185 (10th Cir. 2022) (acknowledging its precedent that the Guidelines commentary is authoritative).

With that background, Rivera contends Kisor renders our holding in Mendoza-Figueroa no longer controlling.  Since Kisor, we have followed Mendoza-Figueroa in several cases, though none of our post-Kisor precedent has substantively reviewed Mendoza-Figueroa.  See United States v. Jefferson, 975 F.3d 700, 708 (8th Cir. 2020) (rejecting challenge that inchoate offenses were not controlled substance offenses on the ground that Court was bound by Mendoza-Figueroa); United States v. Broadway, 815 F. App'x 95, 96 n.2 (8th Cir. 2020) (per curiam) (noting that even if the law had evolved since 1995, the panel was unable to overrule Mendoza-Figueroa); United States v. Merritt, 934 F.3d 809, 811 (8th Cir. 2019) (concluding

argument that drug conspiracy convictions do not fall within the definition of a controlled substance offense because the commentary cannot add conspiracy offenses to the Guidelines was foreclosed by Mendoza-Figueroa); United States v. Miller, 857 F. App'x 877, 878 (8th Cir. 2021) (per curiam) (noting the Sentencing Commission has published a proposed amendment to § 4B1.2 that would resolve circuit split and summarily stating Kisor has not undermined Mendoza-Figueroa).

While there is circuit disagreement on the deference to be afforded the Guidelines' commentary, the weight of authority may suggest that Kisor undermines the Court's decision in Mendoza-Figueroa. The question, though interesting, is not one we are empowered to resolve today, as we are obligated to follow our precedent until it is overruled by the Court sitting en banc. United States v. Manning, 786 F.3d 684, 686 (8th Cir. 2015) (citation omitted). Since Rivera's claim is foreclosed by Eighth Circuit precedent, the ultimate answer to this question awaits another day.[2]

### B. Dangerous Weapons Enhancement

Rivera contends the district court erred in applying the dangerous weapons enhancement under U.S.S.G. § 2D1.1(b)(1), asserting there was no spatial and temporal nexus between when he was found with drugs and when he was found with firearms. This enhancement applies if the government proves, by a preponderance of the evidence: (1) the gun was possessed, and (2) it was not clearly improbable that the weapon was connected to the drug offense. See Anderson, 618 F.3d at 880.

---

[2]There may be another potential argument for not reaching the Kisor question in this particular case. Rivera was convicted of robbery using an accomplice-liability theory rather than as a principal. See United States v. Baca-Valenzuela, 118 F.3d 1223, 1232 (8th Cir. 1997) ("A fundamental theory of American criminal law is that there is no offense of aiding and abetting or accomplice liability as such."). Because we find Rivera's claim foreclosed by precedent, we need not determine the significance of the commentary to U.S.S.G. § 4B1.2 expressly including "crimes of violence" or "controlled substance" offenses involving aiding and abetting, conspiracy, and attempting to commit such offenses, while the Guideline at issue in Baca-Valenzuela, § 2L1.1, did not.

The first prong (possession) does not require proof of ownership of either the weapon or of the premises where the gun was found. Id. at 879 (citation omitted). In addition, the defendant need not be observed using the weapon; it is sufficient if the government demonstrates the defendant "exercised ownership, dominion, or control" of either the firearm or the premises where the firearm is located. Id. at 880 (citing United States v. Payne, 81 F.3d 759 (8th Cir. 1996)).

The district court found Rivera possessed two weapons on May 16, as they were seized from a vehicle he was driving, and he admittedly owned them. "Once a district court has found that a gun was possessed during commission of the offense, the court must impose the § 2D1.1(b)(1) enhancement unless it is clearly improbable that the weapon was connected to the offense." Id. (citing United States v. Peroceski, 520 F.3d 886, 889 (8th Cir. 2008)).

Rivera argues that the evidence is insufficient to conclude his activities on May 16 were part of the same course of conduct as his activities at the motel on March 3. The dangerous weapon enhancement is applicable if the firearm is found during "relevant conduct," as defined in U.S.S.G. § 1B1.3(a)(2) and is not limited to the offense of conviction. United States v. Ault, 446 F.3d 821, 824 (8th Cir. 2006) (citations omitted). As the district court pointed out, both instances involved drug trafficking related conduct, with the only difference being the seizure of a distributable quantity of methamphetamine in March while there was no seizure of drugs but evidence of drug trafficking at the time of Rivera's arrest in May. Specifically, the district court noted the discovery of two scales, one with methamphetamine residue, a pipe with residue, baggies, and two firearms. Notably, Rivera was out on bond for the March possession offense when he was observed at a known drug house and his companion acknowledged that she and Rivera had met with a known drug trafficker.

On this record, the district court did not clearly err in finding the events surrounding the May arrest and seizure of evidence was relevant conduct under the

Guidelines because they were part of Rivera's course of conduct—his ongoing drug trafficking activities—during this three-month period.  See id. (citation omitted). The two-level enhancement under U.S.S.G. § 2D1.1(b)(1) applies.

### C. Reckless Endangerment Enhancement

Finally, Rivera asserts the district court erred when it applied a two-level enhancement for reckless endangerment during flight pursuant to U.S.S.G. § 3C1.2. We have previously applied the reckless endangerment adjustment to a defendant fleeing on foot as well as by car.  See United States v. Bates, 561 F.3d 754, 757 (8th Cir. 2009) (citation omitted).  Our precedent provides that "during flight should be broadly construed and includes conduct in the course of resisting arrest."  United States v. McDonald, 521 F.3d 975, 979 (8th Cir. 2008) (cleaned up).  In this case, Rivera fought with two officers and successfully grabbed an officer's taser.  He then attempted to grab the other officer's duty weapon and was only finally subdued when two bystanders rushed to the aid of the officers.  Rivera's conduct undoubtedly created a substantial risk of injury or death to the officers and bystanders, even though Rivera was tackled the moment he attempted to flee.  And as we previously noted, Rivera's actions that day were relevant conduct under the Guidelines.  The district court did not err in imposing a two-level enhancement for reckless endangerment.

### III.  CONCLUSION

The judgment of the district court is affirmed.

STRAS, Circuit Judge, concurring in part and concurring in the judgment.

A robbery is a robbery no matter how it is committed.  Rivera happened to do it as an accomplice rather than as a principal.  *See* Ark. Code Ann. §§ 5-2-403, 5-12-102.  But that does not change "the crime *of which* he is guilty."  *United States v. Baca-Valenzuela*, 118 F.3d 1223, 1232 (8th Cir. 1997); *see Cook v. State*, 86

S.W.3d 916, 923 (Ark. 2002) (explaining that, under Arkansas law, "[w]hen two persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both"). No separate crime of aiding and abetting exists, no matter the "underlying offense." *Baca-Valenzuela*, 118 F.3d at 1232.

We have already held that an Arkansas robbery conviction counts as a "crime of violence" because it meets the generic definition of robbery under the enumerated-offenses clause. *United States v. Stovall*, 921 F.3d 758, 761 (8th Cir. 2019). *Stovall*, which interprets the career-offender provision, tells us everything we need to know. There is no need to consult the commentary to understand that "aiding and abetting" robbery—one way of committing it—qualifies as a "crime of violence." U.S.S.G. § 4B1.2 cmt. n.1. Deference is beside the point.

I have no doubt that we will need to address the impact of *Kisor* at some point. *Compare United States v. Dupree*, 57 F.4th 1269, 1279 (11th Cir. 2023) (en banc) (declining to defer to the commentary accompanying the career-offender provision after *Kisor*), *with United States v. Smith*, 989 F.3d 575, 584–86 (7th Cir. 2021) (reaffirming that the Guidelines commentary is authoritative). But the circuit split that has developed in its wake focuses on how to treat *inchoate* offenses like conspiracy and attempt, not crimes committed as an accomplice. *See, e.g.*, *Dupree*, 57 F.4th at 1277–79 (concluding that "the plain language . . . in § 4B1.2 unambiguously excludes *inchoate* offenses" (emphasis added)); *see also United States v. Castillo*, 69 F.4th 648, 652 (9th Cir. 2023) (explaining that "inchoate offenses" include "attempt, conspiracy, and solicitation" (quoting *Inchoate Offenses*, *Black's Law Dictionary* (11th ed. 2019))). The court's discussion of deference is better left for a case in which it matters.