UNITED STATES of America, Appellee,

v.

Alfred Muldrow DAVIS, Appellant.

No. 90–5436.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1991.

Decided June 11, 1991.

Rehearing and Rehearing En Banc Denied Aug. 5, 1991.

---

Scott F. Tilsen, Minneapolis, Minn., for appellant.

Andrew S. Dunne, Minneapolis, Minn., for appellee.

Before BOWMAN, MAGILL, and LOKEN, Circuit Judges.

BOWMAN, Circuit Judge.

Alfred Davis was convicted in District Court[1] of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (1988). He was sentenced to the fifteen-year mandatory minimum sentence provided by 18 U.S.C. § 924(e)(1) (1988). He appeals both his conviction and his sentence. We affirm.

I.

On Friday, October 27, 1989, officers from the Hennepin County Sheriff's Department and the Bloomington Police Department executed a search warrant on a one-bedroom apartment in Bloomington, Minnesota occupied by Davis.[2] Upon entering the apartment, the officers found Shari Gynild sleeping on a couch in the living room. Deputy Craig Opsahl went to the bedroom and found Davis lying on the bed. Opsahl instructed Davis to raise his hands and identify himself, which Davis did. By this time, Deputy John Cich had entered the bedroom. While questioning Davis, the officers retrieved a .22 caliber handgun from a dresser drawer in the bedroom. Cich then placed Davis under arrest for a weapons violation. After searching the apartment and vehicles registered to

---

1. The Honorable Edward J. Devitt, Senior United States District Judge for the District of Minnesota.

2. The warrant was based on information that cocaine was present in the apartment.

Davis, the officers took Davis to the county jail, where he remained through the weekend.[3] Gynild was not arrested and was allowed to stay in the apartment.

Davis was interviewed by Deputy Cich on Monday, October 30. With no one else present, Cich read Davis his *Miranda* rights and then began questioning him. Cich asked Davis if he lived in the apartment, and Davis replied that he lived there with his girlfriend. When asked about the gun in the apartment, Davis said that it was his but that he had not bought it. Davis then told Cich that he was having trouble contacting his attorney and asked Cich for assistance. Cich asked Davis if he was requesting to have a lawyer present during questioning. The defendant replied that he was and Cich ended the interview. Davis was released from jail shortly thereafter and later was arrested in April 1990 on the federal firearms charge.

At Davis's trial, Jo Ellen Barnes, an acquaintance of Davis, testified that the apartment that had been searched was rented in her name. She said she did this as a favor to Davis, although she did not live there, and that Davis lived there with his girlfriend. Barnes further testified that Davis talked to her while in jail in October 1989 and told her a gun had been found in the apartment, that she told him she did not know there was a gun in the apartment, and that Davis responded that he was not supposed to have a gun. She also testified that in April 1990, following Davis's arrest, Davis telephoned her and asked her to take responsibility for the gun, and that she declined to do so. She said that Davis told her he would pay $1,500 to her or anybody else who would claim the gun, that she refused the offer, and that Davis again called her before the trial and told her not to say anything about the gun.

Deputy Cich also testified at the trial, limiting his testimony to the October 27 search and the October 30 interview.[4] Davis then took the witness stand and denied any knowledge about the gun. He claimed that the first time he saw the gun was when the officers found it on October 27. Davis denied living at the apartment, and claimed that he only visited there occasionally. Davis denied making any statements about the gun to Deputy Cich on either October 27 or October 30. He also denied talking to Barnes about the gun and denied offering her money to claim the gun.

As a rebuttal witness, the government called Shari Gynild. She testified that she had stayed at the apartment occasionally for about a month prior to the search. She stated that she had seen the gun one week before the search and asked Davis about it. She testified that he told her it was his gun. Over objection from the defense, Gynild testified that on the day after the search, two of Davis's friends talked to her on the phone about the gun, but that she refused to take responsibility for the gun.

The jury found Davis guilty of violating 18 U.S.C. § 922(g)(1). Prior to sentencing, Davis contended that his 1971 state burglary conviction, with respect to which he had been restored, by operation of Minnesota law, to his full civil liberties, should not be used to enhance his sentence pursuant to 18 U.S.C. § 924(e)(1). The District Court ruled that the 1971 conviction should be counted as a prior violent felony; coupling that conviction with Davis's 1979 and 1988 felony convictions, the District Court sentenced Davis to fifteen years' imprisonment pursuant to section 924(e)(1).

On appeal, Davis raises three issues: (1) the District Court erroneously admitted Gynild's testimony concerning her telephone conversation with Davis's friends; (2) the District Court erred by failing to give the jury a specific instruction to consider the voluntariness of Davis's October

---

**3.** Although it appears that Davis spent the weekend in jail without being taken before a magistrate, he raises no issue in that regard.

**4.** Statements made by Davis concerning the handgun at the time of the search were not admitted as direct evidence because they were made in response to questions in a custodial setting and were not preceded by a *Miranda* warning. They were, however, allowed in for impeachment purposes to rebut Davis's testimony.

30 statements to Deputy Cich; and (3) the District Court erroneously imposed the fifteen-year mandatory minimum enhancement provision under section 924(e)(1).

## II.

■ Davis claims that the District Court erred by allowing Shari Gynild to testify about a telephone conversation she had with two people whom she identified as friends of Davis. The gist of her testimony was that these two friends asked Gynild to claim responsibility for the handgun found in Davis's bedroom and that she refused to do so. Davis claims that Gynild's testimony about what the two people asked her to do is hearsay and that the admission of it constitutes reversible error.

Assuming *arguendo* that this testimony was inadmissible hearsay, we are satisfied that its introduction was harmless error. *See* Fed.R.Crim.P. 52(a). Only if the jury may have been "substantially swayed" by improperly-admitted evidence must we reverse the conviction. *United States v. Whalen*, 844 F.2d 529, 534 (8th Cir.1988). Our review of the record in this case convinces us that the admission of Gynild's testimony about the telephone conversation was harmless error at most.

The handgun was found in the bedroom of the apartment where Davis was found. Although Davis claimed that he did not live there, the police found numerous receipts and personal property belonging to Davis in the apartment. The articles of clothing in the drawer where the gun was found belonged to Davis. Gynild testified that she had seen the gun in the dresser drawer shortly before the search, and had been told by Davis that it was his gun. Davis admitted to Deputy Cich in the October 30 interview that the gun belonged to him. Jo Ellen Barnes testified that Davis lived at the apartment. She testified that Davis told her that the gun was his and that Davis tried to get Barnes to claim responsibility for the gun by offering her money. Even if it was error to admit Gynild's testimony concerning the phone conversation, in light of the overwhelming amount of other evidence that Davis possessed the

handgun the admission of this testimony was harmless beyond a reasonable doubt. *See United States v. Battle*, 859 F.2d 56, 58–59 (8th Cir.1988).

## III.

■ Davis claims that the District Court erred by failing specifically to instruct the jury to consider the voluntariness of Davis's statements made to Deputy Cich on October 30. The instruction given by the District Court reads as follows:

> You heard testimony that the defendant made a statement to Hennepin County Sheriff Deputy John Cich. It is for you to decide whether the defendant made that statement, and, if so, how much weight you should give to it.
>
> In making these decisions, you should consider all of the evidence, including the circumstances under which the statements have been made.

Trial Transcript, vol. II at 239. This instruction tracks almost identically Eighth Circuit Model Instruction 2.07. *See Manual of Model Criminal Jury Instructions For The District Courts Of The Eighth Circuit* 28 (rev. ed.1989). Under 18 U.S.C. § 3501(a) (1988), the trial judge is required to determine a confession's voluntariness before admitting it into evidence, and then to allow evidence on the issue of voluntariness. Section 3501(a) also requires the trial judge to "instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances." The contested instruction satisfied this mandate, and was proper.

## IV.

Finally, Davis claims that the District Court erred by imposing the mandatory minimum fifteen-year sentence under 18 U.S.C. § 924(e)(1). Davis was convicted of violating 18 U.S.C. § 922(g)(1), which provides that it is unlawful for anyone who has been convicted of a crime punishable by imprisonment exceeding one year to ship, transport, receive, or possess in interstate commerce any firearm or ammunition. Section 924(e)(1) says that anyone who violates section 922(g) and has three

previous convictions for a violent felony or a serious drug offense shall be imprisoned for not less than fifteen years. At Davis's sentencing, the District Court ruled that he had three previous convictions for a violent felony or a serious drug offense—a 1971 Minnesota burglary conviction, a 1979 Minnesota terroristic threat conviction, and a 1988 Minnesota cocaine possession conviction. Davis argues that his 1971 burglary conviction should not be considered a previous conviction for a violent felony because his civil rights were fully restored by operation of Minnesota law upon the completion of his sentence and his consequent discharge in 1976 from the custody of the state.

For the purposes of section 924(e)(1), a violent felony is defined as "any crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 924(e)(2)(B) (1988). According to 18 U.S.C. § 921(a)(20) (1988), a conviction for such a crime

shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction ... for which a person has ... had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such ... restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

In applying this statutory language, we are concerned with "the restoration of civil rights only insofar as [it] concern[s] the specific right implicitly in question in the federal sentencing scheme: the right to possess firearms." *United States v. Traxel*, 914 F.2d 119, 123 (8th Cir.1990). In 1971, when Davis was convicted of burglary, Minnesota law provided that "[w]hen a person has been deprived of his civil rights by reason of conviction of a crime and is thereafter discharged, such discharge shall restore him to all his civil rights and to full citizenship, ... the same as if such conviction had not taken place." Minn.Stat. § 609.165 subd. 1 (1971). Thus, at the time of Davis's 1971 conviction, part of his punishment was that his civil rights would be impaired only until he was discharged from his conviction.

In 1975, Minnesota passed a law prohibiting violent felons from owning a pistol. Minn.Stat. § 624.713 subd.1(b) (1975) states that "[a] person who has been convicted ... of a crime of violence" shall not be entitled to possess a pistol "unless ten years have elapsed since the person has been restored his civil rights or the sentence has expired, ... and during that time he has not been convicted of any other crime of violence." This statute is a limitation on the rights restored by section 609.-165, and is a limitation on the right relevant to our 18 U.S.C. § 921(a)(20) inquiry: the right to possess a firearm.

■ Davis was convicted of burglary in 1971. He was on parole for that conviction when in 1975 Minnesota increased the punishment for convictions for crimes of violence by enacting section 624.713 subd. 1(b). In 1976, Davis was discharged from his 1971 conviction. The question relevant to our inquiry is whether the civil rights restoration laws in effect at the time of Davis's conviction apply to his discharge, or whether the laws in effect at the time of his discharge apply.

■ We hold that it would be a violation of the Ex Post Facto Clause to apply retroactively the 1975 Minnesota law to Davis's 1971 conviction. At the time of Davis's conviction in 1971, his punishment consisted of, *inter alia*, at least a partial deprivation of his civil rights only until his discharge.[5] The 1975 law, by delaying the

---

5. The government argues that the Ex Post Facto Clause is not violated because "the restoration of civil rights under Minnesota law is triggered by the expiration of a sentence and the subsequent discharge from that conviction." Appellee's Brief at 29. This argument is disingenuous. According to this logic, a prison sentence could be increased by legislative enactment while the sentence imposed under the earlier law is being served, because the restoration of the civil right to liberty is triggered by the release from the state's custody. The Ex Post Facto Clause does not allow such machinations. The penalty for a crime, which may include, *inter alia*, incarceration, a fine, supervised release, and the deprivation of civil rights in addition to the right to liberty, is determined at the

restoration of the right to possess a pistol for an additional period of ten years, clearly increased the punishment for a conviction of a violent crime. It is beyond doubt that the Ex Post Facto Clause forbids " '[any] law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.' " *Miller v. Florida,* 482 U.S. 423, 429, 107 S.Ct. 2446, 2450, 96 L.Ed.2d 351 (1987) (quoting *Calder v. Bull,* 3 Dall. 386, 390, 1 L.Ed. 648 (1798)). If the 1975 Minnesota law limiting the right to possess a pistol were to be applied to a pre–1975 conviction, the effect would be to increase retroactively, in violation of the Ex Post Facto Clause, the punishment for the crime previously committed. We therefore must conclude that to the extent Minnesota could restore Davis's civil rights (including his civil right to keep and bear arms), it did so by operation of section 609.165 subd. 1 when he was discharged from his Minnesota burglary conviction in 1976.

This conclusion, however, is not the end of our inquiry. Here, federal law in effect at the time of Davis's conviction in 1971 prohibited him (as a convicted felon) from receiving, possessing, or transporting any firearm in or affecting interstate commerce. *See* 18 U.S.C.App. § 1202(a) (1976). This prohibition has remained a part of the federal criminal law throughout the period since Davis's 1971 conviction and today is embodied in 18 U.S.C. § 922(g)(1). The restoration of his civil rights by Minnesota upon his discharge from that conviction in 1976 could give him only what Minnesota had the power to give. With respect to firearms, what Minnesota had the power to give was only a narrow right to possess a firearm that was not in or affecting interstate commerce. *Cf. U.S. v. Bell,* 524 F.2d 202, 205 (2nd Cir.1975) (as there was no "contemporaneous interstate nexus ... necessary for a possession conviction," the conviction under § 1202(a) was reversed).

It may be that in enacting § 921(a)(20) Congress intended to make Minnesota's necessarily less-than-complete restoration of the firearms rights of convicted felons like Davis "good enough" for purposes of transforming a conviction like his 1971 burglary conviction into a non-conviction for purposes of applying the federal gun control laws. *See Traxel,* 914 F.2d at 125; *United States v. Gomez,* 911 F.2d 219, 222 (9th Cir.1990). If so, then Congress may have done a thing greatly at odds with the aim of keeping firearms out of the hands of drug dealers and other serious offenders.

■ Here, however, we do not have to decide how far § 921(a)(20) potentially may reach, for when Minnesota discharged Davis in 1976 from his 1971 burglary conviction he was expressly and clearly told, in a letter dated March 8, 1976, enclosing his discharge order (from the chairman of the Minnesota Corrections Board) that "this certificate does not relieve you of the disabilities imposed by the Federal Gun Control Act." Appellee's Addendum at A5. Thus not only were Davis's full civil rights with respect to firearms not restored, but also he was given explicit notice of that fact in a manner that we believe sufficient to satisfy the "unless" clause of § 921(a)(20). By flagging Davis's continuing disabilities under the Federal Gun Control Act, the letter made it plain that the restoration of his civil rights by the state of Minnesota was less than complete and did not include the right to "ship, transport, possess, or receive firearms." This is all the "unless" clause of § 921(a)(20) requires.[6]

As all the civil rights with respect to firearms that Davis lost as a consequence of his 1971 burglary conviction never have been restored to him, and as at the time of his discharge from the 1971 conviction he specifically was advised in a manner that satisfies the "unless" clause of § 921(a)(20) of his continuing disabilities under the Fed-

---

time of conviction. It cannot be increased retroactively.

**6.** This explicit notice to Davis of his continuing disabilities under the Federal Gun Control Act (1) makes this case significantly different from *United States v. Traxel,* 914 F.2d 119 (8th Cir.

1990), in which it does not appear that any such notice was given to Traxel; and (2) makes it unnecessary for us to consider the application of § 921(a)(20) to the circumstances of this case in the absence of such notice.

eral Gun Control Act, it necessarily follows that the 1971 conviction is a conviction as defined by 18 U.S.C. § 921(a)(20). The District Court therefore properly counted this conviction in determining that Davis has three previous convictions within the meaning of § 921(a)(20) and properly imposed a mandatory minimum sentence of fifteen years pursuant to § 924(e)(1).

## V.

Davis's conviction and sentence are affirmed.