[No. 24659-7-II.   Division Two.   January 21, 2000.]
CAREY L. FORSTER, *Appellant*, v. PIERCE COUNTY, ET AL.,
*Respondents*.

*Eric Rolf Stahlfeld*, for appellant.

*Robin Jenkinson, City Attorney*, and *Jean P. Homan, Assistant*, for respondents.

MORGAN, J. — The question in this case is whether a person convicted of delivering drugs in 1972 has an unrestricted right to possess firearms in 1997. The answer is no.

In 1972, Carey L. Forster pleaded guilty to delivering a controlled substance in violation of the Uniform Controlled Substances Act (UCSA). He was sentenced to prison for the statutory maximum term of five years.

In August 1973, Forster was paroled. On January 12, 1977, almost a year before his maximum term was to expire, he received a "Final Discharge Restoring Civil Rights" from the Washington State Board of Prison Terms and Paroles. The Board granted the final discharge pursuant to LAWS OF 1961, chapter 187.

On January 7, 1994, Forster applied for a permit to carry a concealed firearm. He submitted his application to Pierce County's Law Enforcement Support Agency (LESA), acting as designee of the Tacoma Police Department. LESA promptly denied his application, reasoning that he was prohibited from possessing firearms due to his 1972 conviction. Forster appealed administratively, and his appeals were denied no later than the end of March 1994. He took no further action at that time.

Nearly three years later, in January 1997, Forster filed a pro se complaint against Pierce County, the City of Tacoma, and two of their employees. He alleged that the defendants had unlawfully denied him a concealed pistol permit, violated 42 U.S.C. § 1983, and abridged the ex post facto clause. On May 19, 1997, he augmented his complaint with requests for a declaratory judgment and writ of mandamus.

On May 20, 1997, the defendants counterclaimed for malicious prosecution. They also alleged that Forster's claims were "frivolous and advanced without reasonable cause, requiring Defendants to incur costs and attorney's fees in defending the action."[1] They sought liquidated damages of $1,000 for each employee, plus reasonable attorney fees under RCW 4.24.350, RCW 4.84.185 and 42 U.S.C § 1988.

On July 1, 1997, the City moved to dismiss Forster's action pursuant to CR 12(b)(6). The trial court granted the motion and dismissed Forster's complaint. The City then moved for summary judgment on its counterclaims, but failed to provide any factual support. The trial court granted the motion, finding among other things that the action had been filed without probable cause. The trial

[1]Clerk's Papers at 178.

court ordered Forster to pay reasonable attorney fees and $1,000 in damages to each of the two employees, after which Forster filed this appeal.

In 1972, Washington law did not bar a person convicted of delivering a controlled substance from possessing a firearm.[2] Since 1983 it has barred such a person from possessing a short firearm or pistol,[3] although it has also provided that the person "shall not be precluded from possession if the conviction has been the subject of a . . . certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted[.]"[4] Since 1995, the superior court has been able to restore a person's right to possess a firearm,[5] provided that the person files a proper petition and satisfies RCW 9.41.040(3), RCW 9.41.040(4), or 18 U.S.C. § 925(c).[6]

Forster argues to us that these statutes do not affect his right to possess a firearm. This is true, he says, because he falls within a statutory exemption or, even if he does not, because it would violate the ex post facto clause of the constitution to apply 1983 legislation to him. He also assails the order that granted summary judgment on the counterclaims for damages, costs, and fees.

## I. STATUTORY EXEMPTION

Forster bases his first argument on (A) RCW 9.41.040(3) and (B) RCW 9.41.070(3). We consider each in turn.

### A. RCW 9.41.040(3).

In 1994, when Forster applied for a permit, RCW 9.41-

---

[2]Laws of 1961, ch. 124, § 3.

[3]RCW 9.41.040; Laws of 1983, ch. 232, § 2; Laws of 1996, ch. 295, §§ 1, 2. In 1994, the legislature extended the law to bar such person from possessing any firearm. Laws of 1994, 1st Spec. Sess., ch. 7, § 407.

[4]Laws of 1983, ch. 232, § 2.

[5]RCW 9.41.040(4); Laws of 1995, ch. 129, § 16.

[6]RCW 9.41.070(1); Laws of 1996, ch. 295, § 6; Laws of 1995, ch. 350, § 1; Laws of 1994, 1st Spec. Sess., ch. 7, § 407.

.040(1) prohibited him from possessing a firearm. As just seen, however, RCW 9.41.040(3) qualified the prohibition as follows:

> A person shall not be precluded from possession of a firearm if the conviction or adjudication has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted . . . .[7]

Forster now argues that he has satisfied RCW 9.41.040(3) because of the "Final Discharge Restoring Civil Rights" that he received in January 1977. He does not claim, nor could he claim, that the discharge was a pardon, annulment, or certificate of rehabilitation. He does claim, however, that the discharge resulted from an "equivalent procedure based on a finding of rehabilitation."

Division Three recently considered the meaning of the phrase, "other equivalent procedure based on a finding of the rehabilitation of the person convicted." In *State v. Radan*, Montana discharged a previously convicted defendant and restored his civil rights "the same as if the conviction had not occurred."[8] Later, after Washington charged him with unlawful possession of a firearm based on the Montana conviction, he argued that the Washington charge was invalid because Montana had restored his civil rights based on a finding of rehabilitation. Disagreeing, Division Three held that RCW 9.41.040(3)

> applies only when it is established that the procedure included a fact-finding inquiry resulting in a finding of the rehabilitation or innocence of the felon in question. The Montana restoration of rights determination here was automatic and was not based on any fact-finding procedure.[9]

Here, as in *Radan*, Forster's "Final Discharge and Res-

---

[7]RCW 9.41.040(3); Laws of 1992, ch. 205, § 118.

[8]*State v. Radan*, 98 Wn. App. 652, 656, 990 P.2d 962 (1999).

[9]*Id.* at 658. The Attorney General has reached a similar conclusion on at least two occasions. 1993 Op. Att'y Gen. No. 10; 1988 Op. Att'y Gen. No. 10; *cf.* 1969 Op. Att'y Gen. No. 5 (antedating statutes in issue here).

toration of Civil Rights" does not show that the Board of Prison Terms and Paroles held a fact-finding inquiry or made a finding of rehabilitation. Indeed, the discharge implies that the Board did *not* do those things; rather than reciting that a hearing was held and findings made, it states only that *"it has been made to appear* that . . . [Forster] is trustworthy and reliable and will remain at liberty without violating the laws."[10] At first glance, then, it is not sufficient to satisfy RCW 9.41.040(3).

■ Hoping to remedy this deficiency, Forster relies on RCW 9.95.100. It provides:

Any convicted person undergoing sentence in the penitentiary or the reformatory, not sooner released under the provisions of this chapter, shall, in accordance with the provisions of law, be discharged from custody on serving the maximum punishment provided by law for the offense of which such person was convicted, or the maximum term fixed by the court where the law does not provide for a maximum term. The board shall not, however, until his maximum term expires, release a prisoner, unless in its opinion his rehabilitation has been complete and he is a fit subject for release.[11]

Based on the second sentence of this statute, and on the fact that the Board discharged him a year before his maximum term expired, Forster argues that the Board necessarily found that "his rehabilitation has been complete."

We reject this argument for several reasons. First, RCW 9.95.100 requires only an "opinion" of rehabilitation; it

---

While such opinions are not controlling, they can be given considerable weight. *Elovich v. Nationwide Ins. Co.*, 104 Wn.2d 543, 550, 707 P.2d 1319 (1985); *Davis v. King County*, 77 Wn.2d 930, 933-34, 468 P.2d 679 (1970). The opinions cited here were effectively codified when, in 1993, the legislature provided that the "restoration of civil rights shall not restore the right to receive, possess, own, or transport firearms." Laws of 1993, ch. 140, § 4; RCW 9.96.050.

[10]Clerk's Papers at 27.

[11]This section applies to felonies committed before July 1, 1984. *See* RCW 9.95.900.

does not require a fact-finding hearing or a "finding" of re-habilitation. Second, RCW 9.95.100 requires an "opinion" of rehabilitation at the time parole is *granted*; it does not require an "opinion" of rehabilitation at the time parole is *terminated*, yet that is the time relevant to both final discharge and RCW 9.41.040(3). Third, RCW 9.95.100 was enacted when final discharges were unknown to Washington law;[12] it would appear, then, that the legislature did not intend it to affect such discharges. We conclude that Forster has not satisfied RCW 9.41.040(3).

## B. RCW 9.41.070(3).

Forster also claims to have satisfied RCW 9.41.070(3). It provides:

> Any person whose firearms rights have been restricted and who has been granted relief from disabilities by the secretary of the treasury under 18 U.S.C. Sec. 925(c) or who is exempt under 18 U.S.C. Sec. 921(a)(20)(A) shall have his or her right to acquire, receive, transfer, ship, transport, carry, and possess firearms in accordance with Washington state law restored except as otherwise prohibited by this chapter.

18 U.S.C. § 921(a)(20) provides:

> (20) The term "crime punishable by imprisonment for a term exceeding one year" does not include—
>
> (A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or
>
> (B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.
>
> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been

---

[12]*Compare* LAWS OF 1955, ch. 133, § 11, with LAWS OF 1961, ch. 187, § 1.

pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

■ Forster apparently reasons that RCW 9.41.070(3) incorporates *all* of 18 U.S.C. § 921(a)(20); that 18 U.S.C. § 921(a)(20) allows a person whose civil rights have been restored to possess firearms despite a previous conviction; and thus that he has an unrestricted right to possess firearms. This reasoning is clearly wrong. RCW 9.41.070 incorporates 18 U.S.C. § 921(a)(20)*(A)*, *not* 18 U.S.C. § 921(a)(20). 18 U.S.C. § 921(a)(20)*(A)* refers only to "antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices." Forster did not commit an antitrust violation, unfair trade practice or similar offense related to the regulation of business practices, so he has not satisfied RCW 9.41.070(3).

■ Peculiarly, Forster relies on a version of RCW 9.41.070(3) that became obsolete more than two and a half years before he commenced this action. That version was in effect from 1992 to June 30, 1994.[13] While in effect, it provided:

> Any person whose firearms rights have been restricted and who has been granted relief from disabilities by the secretary of the treasury under 18 U.S.C. Sec. 925(c) or who is exempt under 18 U.S.C. Sec. 921(a)(20) shall have his or her right to acquire, receive, transfer, ship, transport, carry, and possess firearms in accordance with Washington state law restored.

This version might have a place in this case *if*, within 30 days of the defendants' denial of his application for a

---

[13]Laws of 1992, ch. 168, § 1; Laws of 1994, 1st Spec. Sess., ch. 7, § 407.

permit, Forster had sought judicial review of their decision to deny. In that event, he at least could argue, by analogy to the building permit cases,[14] that he had a vested right in the law and regulations that existed on the date of his application (January 7, 1994).[15] It is obvious, however, that he did not seek judicial review of the administrative denial; instead, he waited three years, then brought an *original action* for declaratory judgment or mandamus. As a result, he could not possibly have a right to apply a version of the statute that ceased to be effective more than two and a half years before he commenced the action, and he has failed to satisfy RCW 9.41.070(3).

## II. EX POST FACTO

Forster argues that even if he has not satisfied RCW 9.41.040(3) or RCW 9.41.070(3), he cannot constitutionally be prohibited from possessing a firearm. He reasons that he was not prohibited from possessing a firearm when first convicted in 1972, and that later legislation cannot be applied to him without violating the constitutional prohibition against ex post facto legislation.

The United States Constitution provides that no state shall pass any ex post facto law.[16] The purposes are "to assure that legislative Acts give fair warning of their effect," and to restrain "arbitrary and potentially vindictive legislation."[17]

---

[14]*See Noble Manor Co. v. Pierce County*, 133 Wn.2d 269, 278, 943 P.2d 1378 (1997); *Friends of the Law v. King County*, 123 Wn.2d 518, 522, 869 P.2d 1056 (1994); *West Main Assocs. v. City of Bellevue*, 106 Wn.2d 47, 51, 720 P.2d 782 (1986).

[15]We do not imply that Forster has any such right. We have no occasion to consider that question.

[16]U.S. Const. art. I, § 10; *see also* U.S. Const. art. I, § 9 ("No . . . ex post facto law" shall be passed by Congress); Wash. Const. art. I, § 23.

[17]*Weaver v. Graham*, 450 U.S. 24, 28-29, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981).

■■ Whether a law is "ex post facto" turns on two basic questions: (1) Is the law "criminal" or "punitive," rather than "civil" or "non-punitive"? (2) If the law is "criminal" or "punitive," does it punish past or future conduct?[18] "Past conduct" means conduct occurring before the law's effective date, while "future conduct" means conduct occurring after the law's effective date.[19]

■ If a law is not "criminal" or "punitive," it can be applied to any conduct, either past or future, without violating the ex post facto clause. As the United States Supreme Court explained in *Kansas v. Hendricks*, "The *Ex Post Facto Clause*, which 'forbids the application of any new punitive measure to a crime already consummated,' has been interpreted to pertain exclusively to penal statutes."[20]

---

[18]*See Weaver*, 450 U.S. at 29 ("two critical elements must be present for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender") (footnote omitted).

[19]*Weaver*, 450 U.S. at 29 (law is "retrospective" for purposes of ex post facto if it "appl[ies] to events occurring before its enactment"); *State v. Aho*, 137 Wn.2d 736, 742, 975 P.2d 512 (1999) ("To fall within the *ex post facto* prohibition, a law must be retrospective—that is 'it must apply to events occurring before its enactment' . . . .") (quoting *Lynce v. Mathis*, 519 U.S. 433, 441, 117 S. Ct. 891, 137 L. Ed. 2d 63 (1997)); *In re Personal Restraint of Stanphill*, 134 Wn.2d 165, 170, 949 P.2d 365 (1998) ("A law is retrospective if it 'changes the legal consequences of acts completed before its effective date.'") (quoting *Miller v. Florida*, 482 U.S. 423, 430, 107 S. Ct. 2446, 96 L. Ed. 2d 351 (1987)); *Addleman v. Board of Prison Terms & Paroles*, 107 Wn.2d 503, 506, 730 P.2d 1327 (1986) (same); *State v. Randle*, 47 Wn. App. 232, 240, 734 P.2d 51 (1987) (same), *review denied*, 110 Wn.2d 1008 (1988); *see also Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390-92, 1 L. Ed. 648 (1798).

[20]*Kansas v. Hendricks*, 521 U.S. 346, 370, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997) (quoting *Lindsey v. Washington*, 301 U.S. 397, 401, 57 S. Ct. 797, 81 L. Ed. 1183 (1937)); *see also Collins v. Youngblood*, 497 U.S. 37, 41, 43, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990) ("[I]t has long been recognized by this Court that the constitutional prohibition on *ex post facto* laws applies only to penal statutes . . ."; "Legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts."); *United States v. O'Neal*, 180 F.3d 115, 122 (4th Cir.) ("While laws that retroactively increase 'punishment' or impose a 'penalty' violate the *Ex Post Facto* Clause, retroactive civil or regulatory ones do not."), *cert. denied*, 120 S. Ct. 433 (1999); *Russell v. Gregoire*, 124 F.3d 1079, 1084, 1086-87 (9th Cir. 1997), (registration and notification requirements under sex offender statute not subject to ex post facto clause), *cert. denied*, 523 U.S. 1007 (1998); *Doe v. Pataki*, 120 F.3d 1263, 1272 (2d Cir. 1997) ("[T]he Ex Post Facto Clause of the Constitution 'applies only to *penal* statutes which disad-

If a law is "criminal" or "punitive," it can be applied to future conduct without violating the ex post facto clause. As the United States Supreme Court explained in *McDonald v. Massachusetts*, "The statute, imposing a punishment on none but future crimes, is not *ex post facto*."[21]

If a law is "criminal" or "punitive," it cannot be applied to past conduct without violating the ex post facto clause.[22] Accordingly, the United States Supreme Court has repeatedly categorized as ex post facto:

> 1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.[23]

These concepts have been imprecisely expressed by say-

---

vantage the offender affected by them.' ") (citing *Collins*, 497 U.S. at 41)), *cert. denied*, 522 U.S. 1122 (1998); *State v. Ward*, 123 Wn.2d 488, 499, 869 P.2d 1062 (1994) (registration and notification requirements under sex offender statute not subject to ex post facto clause; "The ex post facto prohibition applies only to laws inflicting criminal *punishment*."). Parenthetically, the courts generally consider two factors when determining whether a law is criminal or punitive. One is the legislature's intent; the other is the law's effect. *E.g. Hendricks*, 521 U.S. at 361 ("Although we recognize that a 'civil label is not always dispositive,' we will reject the legislature's manifest intent only where a party challenging the statute provides 'the clearest proof' that 'the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.' " (citation omitted) (quoting *United States v. Ward*, 448 U.S. 242, 248-49, 100 S. Ct. 2636, 65 L. Ed. 2d 742 (1980)); *United States v. Newman*, 144 F.3d 531, 540 (7th Cir. 1998) (same); *Russell*, 124 F.3d at 1087 ("When examining whether a law violates the Ex Post Facto Clause, we inquire whether (1) the legislature intended the sanction to be punitive, and (2) the sanction is 'so punitive' in effect as to prevent the court from legitimately viewing it as regulatory or civil in nature, despite the legislature's intent."); *Ward*, 123 Wn.2d at 499, 510-11; *In re Personal Restraint of Young*, 122 Wn.2d 1, 24, 857 P.2d 989 (1993) ("Because the statute is civil . . . the ex post facto prohibition does not apply.").

[21]*McDonald v. Massachusetts*, 180 U.S. 311, 313, 21 S. Ct. 389, 45 L. Ed. 542 (1901); *Russell*, 124 F.3d at 1088-89; *State v. Watkins*, 76 Wn. App. 726, 732, 887 P.2d 492 (1995); 1 WAYNE R. LaFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 2.4(a) at 139 (1986).

[22]*Calder*, 3 U.S. (3 Dall.) at 390-92.

[23]*Calder*, 3 U.S. (3 Dall.) at 390; *see also Collins*, 497 U.S. at 42, 43 n.3; *Dobbert v. Florida*, 432 U.S. 282, 292, 97 S. Ct. 2290, 53 L. Ed. 2d 344, *reh'g denied*, 434 U.S. 882 (1977); *Beazell v. Ohio*, 269 U.S. 167, 169-70, 46 S. Ct. 68, 70 L. Ed.

ing that "A law violates the ex post facto clause if it: (1) is substantive, as opposed to merely procedural; (2) is retrospective (applies to events which occurred before its enactment); and (3) disadvantages the person affected by it."[24] To say that a law is "merely procedural" often means (but does not always mean) that the law is not "criminal" or "punitive."[25] To say that a law is "retrospective" means that the law applies to past conduct (i.e., to conduct that occurred before its effective date).[26] To say that a law "disadvantages the person" means that the law disadvantages *an offender* by punishing him or her to a greater extent than before.[27]

---

216 (1925); *State v. Aho*, 137 Wn.2d 736, 742 n.1, 975 P.2d 512 (1999); *Ward*, 123 Wn.2d at 497; *Young*, 122 Wn.2d at 23; *State v. Handran*, 113 Wn.2d 11, 14, 775 P.2d 453 (1989); *State v. Edwards*, 104 Wn.2d 63, 70-71, 701 P.2d 508 (1985). We omit a fourth category, pertaining to the rules of evidence, for the reasons discussed in *Collins v. Youngblood*, 497 U.S. 37.

[24]*State v. Hennings*, 129 Wn.2d 512, 525, 919 P.2d 580 (1996); *Ward*, 123 Wn.2d at 496; *In re Personal Restraint of Powell*, 117 Wn.2d 175, 185, 814 P.2d 635 (1991), *cert. denied*, 516 U.S. 825 (1995); *State v. Ashcraft*, 71 Wn. App. 444, 451, 859 P.2d 60 (1993); *see also Stanphill*, 134 Wn.2d at 170-71; *State v. Serio*, 97 Wn. App. 586, 588, 987 P.2d 133 (1999).

[25]*Collins*, 497 U.S. at 44, 46 (procedural law is not ex post facto if "[i]t does not alter the definition of the crime" or "increase the punishment"; but "by simply labeling a law 'procedural,' a legislature does not thereby immunize it from scrutiny under the *Ex Post Facto Clause'*"); 1 LaFave & Scott, *supra*, § 2.4(a) at 140 n.30 ("some procedural changes may . . . come under the ex post facto ban"). According to the United States Supreme Court, the distinction between "procedural" and "substantive" laws "has imported confusion into the interpretation of the *Ex Post Facto Clause*." *Collins*, 497 U.S. at 45. *See also Stanphill*, 134 Wn.2d at 170 ("the application of determinate sentencing to a pre-SRA offender" is "substantive" where it "alters the sentencing scheme").

[26]*Weaver*, 450 U.S. at 29; *Aho*, 137 Wn.2d at 742; *Stanphill*, 134 Wn.2d at 170; *Addleman*, 107 Wn.2d at 506; *Randle*, 47 Wn. App. at 240; *see also Calder*, 3 U.S. (3 Dall.) at 390-92.

[27]*Collins*, 497 U.S. at 41 ("constitutional prohibition on *ex post facto* laws applies only to penal statutes which disadvantage *the offender* affected by them") (emphasis added)); *Weaver*, 450 U.S. at 29 (to be ex post facto, law "must disadvantage *the offender*" (emphasis added)); *Stanphill*, 134 Wn.2d at 170-71 (whether person is "disadvantaged" depends on "whether the law alters the standard of punishment which existed under prior law"); *Hennings*, 129 Wn.2d at 525-26 (same as *Stanphill*; and further, "the proper inquiry is not whether the law is . . . 'disadvantageous' to the defendant, but whether it makes more burdensome the *punishment* for the crime"); *Ward*, 123 Wn.2d at 498 (same as *Stanphill*); *see also Calder*, 3 U.S. (3 Dall.) at 390-92.

In this case, the 1983 changes to RCW 9.41.040 were both criminal and punitive. In 1972, RCW 9.41.040 did not prohibit a person convicted of delivering illegal drugs from possessing a firearm. In 1983, RCW 9.41.040 was changed so that a person convicted of delivering illegal drugs is guilty of a felony if he or she possesses a firearm. A new law simply cannot be more criminal or punitive than that.[28]

Even though the 1983 changes were criminal and punitive, they apply to future conduct, not to past conduct; thus, they are not an ex post facto law. In *State v. Watkins*,[29] a juvenile was convicted of a drug offense in 1992. The law in effect at that time did not prohibit him from possessing a firearm; later, however, it was changed so that it did prohibit him from possessing a firearm. After the new law took effect, the juvenile was found with a firearm and charged accordingly. He argued, as Forster does here, that applying the new law to him would violate the ex post facto clause. Division One held in essence that the new law applied only to future conduct (i.e., to conduct occurring after its effective date).[30] Thus, the new law was not ex post facto.

---

[28]In passing, we note that the reasoning in *United States v. Huss*, 7 F.3d 1444 (9th Cir. 1993), *overruled on other grounds by United States v. Sanchez-Rodriguez*, 161 F.3d 556 (9th Cir. 1998), a case relied on by the defendants, is not persuasive. At all times material in *Huss*, federal law made it a federal felony for a convict to possess a firearm that he could not lawfully possess under state law. Before 1990, state law did not make it unlawful for a convict to possess a rifle or shotgun. In 1990, the state law was changed to make it a felony for a convict to do that. The defendant thereafter possessed a rifle or shotgun and was convicted in federal court. Rejecting his ex post facto challenge, the federal Ninth Circuit stated (1) "that the 1990 Oregon law does not have a punitive effect," and (2) "that the Oregon weapons restriction does not impose punishment for prior crimes." *Huss*, 7 F.3d at 1448. The first statement cannot be right, for a new felony (or the expansion of an old felony) is necessarily both criminal and punitive. (Indeed, if the first statement were right, the government could have prosecuted the defendant for possessing a rifle or firearm *prior to* the new felony's enactment, a result that obviously contravenes the ex post facto clause.) On the other hand, the second statement is right, and thus the court properly concluded that the statute in issue was not ex post facto.

[29]76 Wn. App. 726, 732, 887 P.2d 492 (1995).

[30]*Id.* at 732; *accord, State v. Tully*, 198 Wash. 605, 607, 89 P.2d 517 (1939); *State v. Le Pitre*, 54 Wash. 166, 168, 103 P. 27 (1909); *Huss*, 7 F.3d 1444; *Cases v. United States*, 131 F.2d 916, 921 (1st Cir. 1942), *cert. denied*,

Other jurisdictions are generally in accord.[31] So also are the commentators; discussing the analogous problem of habitual criminal statutes, LaFave and Scott state:

> Some ex post facto questions of the increased-punishment type have arisen in connection with the passage of habitual criminal laws, which impose enhanced penalties for later offenses if the defendant has previously been convicted of one or more crimes. If the defendant commits crime A at a time when there is no habitual criminal statute, then such a statute is passed imposing increased punishment for a second offense, and then the defendant commits crime B, it is not within the ex post facto prohibition to apply the habitual criminal statute to crime B. No additional punishment is prescribed for crime A, but only the new crime B, which was committed after the statute was passed.[32]

Based on these authorities, we conclude that the 1983 changes to RCW 9.41.040 will punish Forster for future conduct (i.e., for conduct occurring after the 1983 changes took effect) if and when he again possesses a firearm. The 1983 changes will not, however, punish him for past conduct (i.e., for conduct occurring before the changes took effect). Accordingly, the 1983 changes are not ex post facto, and they control Forster's application for a concealed

---

319 U.S. 770 (1943); *but see United States v. Davis*, 936 F.2d 352, 356 (8th Cir. 1991), *cert. denied*, 503 U.S. 908 (1992).

[31]*United States v. Karnes*, 437 F.2d 284, 289-90 (9th Cir.) (firearms statute not ex post facto where Congress merely restricted future activities), *cert. denied*, 402 U.S. 1008 (1971); *United States v. Sutton*, 521 F.2d 1385, 1390 (7th Cir. 1975) (firearms statute not ex post facto where it "does not criminalize an act done before its passage"); *Smith v. United States*, 312 F.2d 119, 120-21 (10th Cir. 1963) (same); *State v. Williams*, 358 So. 2d 943, 946 (La. 1978) (Louisiana statute not ex post facto, even though it "prohibits specified future conduct, the carrying of a concealed weapon"); *but see Davis*, 936 F.2d at 356.

Forster relies on *Davis*, 936 F.2d 352, but we find that case unpersuasive for at least two reasons: (1) The *Davis* court said "it would be a violation of the Ex Post Facto Clause to apply retroactively the 1975 Minnesota law to Davis's [sic] 1971 conviction." At all material times, however, a federal law of which the defendant had knowledge barred him from possessing firearms regardless of Minnesota law. Thus, the *Davis* court's discussion of Minnesota law was dictum. (2) To the extent that the *Davis* court said that the 1975 law applied to past conduct, we simply cannot agree.

[32]1 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 2.4(a) at 139 (1986).

weapons permit unless and until his right to possess a firearm is restored.[33]

## III. COUNTERCLAIMS AND FEES

■ Forster argues that the trial court erred by granting the defendants' motion for summary judgment on their counterclaims. The defendants did not respond in their briefs, and they conceded error at oral argument. A party seeking summary judgment has the initial burden of showing the absence of any issue of material fact,[34] and the defendants did not meet that burden here. We reverse the order granting the counterclaims.

■ Forster argues that the trial court erred by characterizing his complaint as frivolous and awarding reasonable attorney fees. As with the counterclaims, the defendants did not respond in their brief, and they conceded error at oral argument. Additionally, RCW 4.84.185 states:

> In any civil action, the court having jurisdiction may, upon written findings by the judge that the action . . . was frivolous and advanced without reasonable cause, require the nonprevailing party to pay the prevailing party the reasonable expenses, including fees of attorneys, incurred in opposing such action. . . . This determination shall be made upon motion by the prevailing party after a voluntary or involuntary order of dismissal, order on summary judgment, final judgment after trial, or other final order terminating the action as to the prevailing party. The judge shall consider all evidence presented at the time of the motion to determine whether the position of the nonprevailing party was frivolous and advanced without reasonable cause.

A lawsuit is frivolous when it cannot be supported by a rational argument on the law or facts.[35] The statute also requires the action be frivolous in its entirety, i.e., if any of

---

[33]*See* RCW 9.41.040(4).

[34]*Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

[35]*Daubner v. Mills*, 61 Wn. App. 678, 684, 811 P.2d 981 (1991).

the claims asserted are not frivolous, then the action is not frivolous.[36] Given the welter of statutes involved here, we cannot say the action is utterly frivolous. We reverse the order granting reasonable attorney fees.

The order dismissing Forster's complaint is affirmed. The orders granting damages, fees and costs are reversed. Neither side shall receive fees or costs on appeal.

HOUGHTON and HUNT, JJ., concur.

Review denied at 141 Wn.2d 1010 (2000).

---

[36]*Biggs v. Vail*, 119 Wn.2d 129, 133, 830 P.2d 350 (1992).