2001 SD 72

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Tracy Lee TROWER, Defendant and Appellant.**

**No. 21440.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 27, 2000.

Decided June 6, 2001.

Mark Barnett, Attorney General, Michele K. Bennett, Assistant Attorney General, Pierre, SD, Attorneys for plaintiff and appellee.

Patrick M. Schroeder, Sioux Falls, SD, Attorney for defendant and appellant.

AMUNDSON, Justice

[¶ 1.] Tracy Lee Trower appeals his conviction for possession of a firearm by a person convicted of a crime of violence. We reverse.

## FACTS

[¶ 2.] Trower is a resident of Colman. On October 12, 1990, he was convicted in circuit court for the Fifth Judicial Circuit of one felony count of sexual contact with a child under sixteen. Trower completed his sexual contact sentence in 1994. On October 6, 1999, he was seen in Colman in possession of a firearm. His possession was reported to the police chief who stopped Trower's vehicle. After the stop, the officer found Trower, who claimed he was going hunting, inside the vehicle along with a twelve-gauge shotgun and twenty-four rounds of ammunition. Trower was subsequently charged with one count of possession of a firearm by a person convicted of a crime of violence. The charge was brought pursuant to SDCL 22–14–15:

> No person who has been convicted in this state or elsewhere of a crime of violence or a felony under chapter 22–42, other than pursuant to § 22–42–5 or 22–42–6, may possess or have control of a firearm. A violation of this section is a Class 6 felony. This section does not apply to any person who was last discharged from prison, jail, probation, or parole, for a crime of violence or a felony under chapter 22–42, other than pursuant to § 22–42–5 or 22–42–6, more than fifteen years prior to the commission of the principal offense.

[¶ 3.] Trower later moved to dismiss the firearms charge on the basis that sexual contact with a child was not defined as a "crime of violence" at the time of his conviction in 1990. In fact, sexual contact was not defined as a "crime of violence" until

1992. *See* 1992 SD SessL ch 165 (an act to designate felony sexual contact as a crime of violence). As a result, Trower contended that convicting him of the firearms charge would violate the prohibitions against ex post facto laws contained in the federal and state constitutions.

[¶ 4.] The hearing on Trower's motion to dismiss and a court trial were held on January 24, 2000. The two proceedings were essentially merged and much of the trial was confined to the issue of whether Trower's conviction would violate the ex post facto prohibitions. The trial court ultimately determined it would not and entered a judgment of conviction against Trower sentencing him to a two hundred dollar fine and a suspended sentence of six months in the penitentiary. Trower appeals.

## ISSUE

[¶ 5.] **Does Trower's conviction violate the federal and state constitutional prohibitions against ex post facto laws?**

[¶ 6.] US Const. art. I, § 10 provides in pertinent part that, "[n]o state shall ... pass any ... ex post facto law[.]" Similarly, SD Const. art. VI, § 12 provides in pertinent part that, "[n]o ex post facto law ... shall be passed."

> These constitutional prohibitions bar retroactive application of any law inflicting greater punishment for a crime than the law originally rendered at the time the crime was committed. The prohibition fulfils two principles: (1) legislative enactments must give fair warning of their effect, thus allowing reliance on the current law until it is legislatively changed; and (2) laws cannot arbitrarily or vindictively punish persons for past acts that were not criminal or were less criminal when they were committed.

*Meinders v. Weber*, 2000 SD 2, ∙ ¶ 9, 604 N.W.2d 248, 254 (citations omitted).

■ [¶ 7.] Trower argues that because sexual contact with a child was not defined as a crime of violence at the time of his 1990 conviction, his later conviction for possession of a firearm by a person convicted of a crime of violence constitutes greater punishment for his sexual contact offense than the law originally rendered at the time the crime was committed. Accordingly, he contends his conviction runs afoul of the ex post facto prohibitions in the state and federal constitutions and must be reversed.

■ [¶ 8.] Trower's contentions are subject to de novo review. *Meinders, supra.* While both Trower and the State cite a variety of sources for their arguments, the United States Court of Appeals for the Eighth Circuit addressed a similar question in *U.S. v. Davis,* 936 F.2d 352 (8th Cir.1991). In *Davis,* the defendant was convicted of a state burglary offense in 1971. In 1975, while the defendant was still on parole for that conviction, the state passed a law prohibiting violent felons from owning a pistol for a period of ten years. In essence, this change in the law had the effect of transforming the defendant's burglary conviction into a "violent felony" for purposes of certain federal sentencing laws. *See Davis,* 936 F.2d at 356. In 1976, the defendant was discharged from his burglary conviction. In 1990, the defendant was arrested for possession of a firearm by a federal felon. After his conviction, the district court sentenced the defendant to a mandatory minimum sentence based upon his history of "violent felonies" including the 1971 burglary conviction. In reviewing the propriety of the use of that conviction to sustain the mandatory minimum sentence, the Eighth Circuit stated:

> We hold that it would be a violation of the Ex Post Facto Clause to apply retro-

actively the 1975 Minnesota law to [the defendant's] 1971 conviction. At the time of [the defendant's] conviction in 1971, his punishment consisted of, *inter alia*, at least a partial deprivation of his civil rights only until his discharge. The 1975 law, by delaying the restoration of the right to possess a pistol for an additional period of ten years, clearly increased the punishment for a conviction of a violent crime. It is beyond doubt that the Ex Post Facto Clause forbids " '[any] law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.' " *If the 1975 Minnesota law limiting the right to possess a pistol were to be applied to a pre—1975 conviction, the effect would be to increase retroactively, in violation of the Ex Post Facto Clause, the punishment for the crime previously committed.* We therefore must conclude that to the extent Minnesota could restore [the defendant's] civil rights (including his civil right to keep and bear arms), it did so by operation of section 609.165 subd. 1 when he was discharged from his Minnesota burglary conviction in 1976. *Davis,* 936 F.2d at 356–357 (citations omitted)(emphasis added).

[¶ 9.] This Court is confronted with a scenario very similar to that under scrutiny in *Davis, supra.* Trower was convicted for sexual contact in 1990. In 1992, however, while Trower was still serving his sentence, the law was amended to redefine a "crime of violence" to include sexual contact with a child and to thereby prohibit Trower from bearing arms. *See* 1992 SD SessL ch 165 (an act to designate felony sexual contact as a crime of violence). Thus, just as in *Davis, supra,* if the 1992 law limiting the right to possess firearms was applied to a pre–1992 conviction, the effect would be to increase retroactively, in violation of the Ex Post Facto

Clause, the punishment for the crime previously committed. That is precisely what occurred when Trower was convicted for his firearms violation. Accordingly, under *Davis,* the conviction must be reversed for having been obtained in violation of the ex post facto clauses of the federal and state constitutions.

[¶ 10.] This result is consistent with our prior decision in *Delano v. Petteys,* 520 N.W.2d 606 (S.D.1994). In *Delano,* the defendant was convicted of sexual contact with a child under sixteen and sentenced to the penitentiary for ten years. Six years later, the Legislature amended the law to permit the withholding of an inmate's good conduct time for conduct evincing an intent to reoffend. Pursuant to this amendment, all of the defendant's good conduct time was withheld because of his likelihood of reoffending upon release. In reviewing the matter, this Court held that the denial of good conduct time violated the ex post facto clauses of the state and federal constitutions because the amendment was more onerous than the prior law. The same is true here with regard to Trower's right to bear arms.

[¶ 11.] The Iowa Supreme Court did come to a contrary conclusion in *State v. Swartz,* 601 N.W.2d 348 (Iowa 1999). In *Swartz,* the Iowa court held that application of a statute banning possession of a firearm by a felon did not violate the ex post facto prohibition where the defendant's underlying felony conviction occurred before the effective date of the statute. In reaching this holding, the Iowa court noted:

Support for our conclusions is found in *United States v. Brady,* 26 F.3d 282 (2d Cir.1994). There, the defendant argued that to allow his 1951 felony conviction to serve as a basis for establishing violation of a subsequently enacted federal

statute banning possession of firearms by felons violated the ex post facto clause. In rejecting this argument, the court stated that,

> [r]egardless of the date of [defendant's] prior conviction, the crime of being a felon in possession of a firearm was not committed until after the effective date of the statute under which he was convicted.

*Brady*, 26 F.3d at 291. Similar conclusions were reached in *United States v. Etheridge*, 932 F.2d 318, 323 (4th Cir. 1991), and *United States v. Patterson*, 820 F.2d 1524, 1527 (9th Cir.1987). We are satisfied that these principles govern the disposition of defendant's claims under federal law.

*Swartz*, 601 N.W.2d at 351. Notwithstanding the above, the Iowa court also recognized the necessity of distinguishing the Eighth Circuit's holding in *Davis, supra.* In that vein, it stated:

> The *Davis* decision is discussed at length in the Eighth Circuit opinion in *United States v. Baca—Valenzuela*, 118 F.3d 1223, 1231 (8th Cir.1997). In the latter case, the court declares the applicable ex post facto principle to be "[s]o long as the actual crime for which a defendant is being sentenced occurred after the effective date of the new statute, there is no ex post facto violation." That characterization of the ex post facto prohibition is consistent with this court's statement in *State v. Pickens*, 558 N.W.2d 396, 397 (Iowa 1997) ... In applying the test articulated in *Pickens*, we conclude that section 724.26 [*i.e.*, the Iowa prohibition against a felon in possession of a firearm] is intended to regulate a present situation that includes defendant's continuing status as a convicted felon.

*Swartz*, 601 N.W.2d at 350–351. (some citations omitted).

[¶ 12.] While the Iowa court was accurate in its quotation of *Baca–Valenzuela, supra*, it ignored that the Eighth Circuit was careful to preserve its holding in *Davis* when it decided *Baca—Valenzuela.* In that very regard, the federal court specifically noted:

> Despite these clear principles, Baca—Valenzuela argues here that Section 1326(b) is an ex post facto law under the reasoning of [*Davis, supra* ]. This argument is misplaced. In *Davis* the defendant was convicted of a felony. Later a new statute was passed barring felons from carrying firearms for ten years after their release from prison. The question was whether this new bar on firearms possession constituted an ex post facto law as applied to a person convicted of a felony prior to the enactment of the firearms statute. We concluded it was a forbidden ex post facto law, because, as applied, the new statute plainly increased the punishment for a past offense.
>
> *That is not the case here.*

*Baca—Valenzuela*, 118 F.3d at 1231 (emphasis added).

[¶ 13.] This case, in contrast with *Baca—Valenzuela*, presents the precise situation considered in *Davis*. Trower was convicted of a felony and, later, an amendment was passed barring felons in his situation from carrying firearms. Thus, the question here is the same question presented in *Davis, i.e.,* whether this new bar on firearms possession constitutes an ex post facto law as applied to Trower. Just as in *Davis*, we hold that it does.*

[¶ 14.] Reversed.

---

* In reaching this conclusion, we distinguish cases such as *State v. Peters*, 261 Neb. 416,

622 N.W.2d 918 (2001) where a defendant is convicted of a felony and, later, the State

[¶ 15.] SABERS, Justice, and RUSCH, Circuit Judge, concur.

[¶ 16.] MILLER, Chief Justice, and KONENKAMP, Justice, dissent.

[¶ 17.] RUSCH, Circuit Judge, for GILBERTSON, Justice, disqualified.

KONENKAMP, Justice (dissenting).

[¶ 18.] The Legislature's amendment defining sexual contact with a child under sixteen as a crime of violence was not a form of retroactive punishment. Trower was punished not for his earlier felony, but for the new and separate crime of which the prior felony was an element. The Legislature specifically enacted a gun control law prohibiting violent felons discharged from prison less than fifteen years before the commission of the principal offense from possessing or controlling a firearm. SDCL 22–14–15. This might be a different case if the prior felony, now designated as violent, was used because of the violent label to enhance Trower's sentence on a new conviction. However, laws retrospectively prohibiting felons from owning guns are not considered punitive. As the United States Supreme Court stated, such laws impose an "essentially civil disability."

*Lewis v. United States,* 445 U.S. 55, 67, 100 S.Ct. 915, 922, 63 L.Ed.2d 198 (1980). *See Meinders v. Weber,* 2000 SD 2, ¶¶ 13–14, 604 N.W.2d 248, 255 (upholding sex offender registration as remedial public safety measure, not ex post facto punishment).

[¶ 19.] A majority of courts have upheld as not violative of state and federal ex post facto clauses statutory amendments prohibiting prior convicted felons from possessing firearms. These enactments are not considered retroactive punishment. They are considered public safety laws enacted to lessen the "high potential of danger to the public" and to reduce the probability that convicted felons might continue their criminal activity. *State v. Vainio,* 466 A.2d 471, 475 (Me.1983). As the *Vainio* court held, "The Legislature could justifiably conclude there was a need for [more] gun control legislation in the case of convicted criminals." *Id.* (Brackets in original). Here, just as significantly, the Legislature could conclude that those convicted of child molestation pose a danger and should not be allowed to be armed. As we recognized in *Meinders,* in response to "the pernicious impact of crimes against

---

passes a law forbidding all of those convicted of a felony from owning a certain class of firearm. This case, unlike those cases, involved a retroactive change in Trower's *status.* Trower was never convicted of a "crime of violence." As in *Davis, supra,* it was only a later change in the law that redefined his offense as a violent crime. *Peters* and its ilk would be more applicable if the defendant were convicted of a misdemeanor and a later change in the law redefined the offense as a felony used to enhance a subsequent sentence. Such was not the case in *Peters,* however.

Nor is this a case like *Meinders, supra,* where a majority of this Court held that South Dakota's sex offender registration laws did not violate the ex post facto prohibitions of the federal and state constitutions. The foundation of the Court's reasoning in *Meinders* was that sex offender

registration laws are not punitive. As one of the dissent's own authorities points out in the present context, however, "[a] new law simply cannot be more criminal or punitive" than one that retroactively changes a defendant's status and makes it a felony for him to possess a firearm. *See Forster v. Pierce County,* 99 Wash.App. 168, 991 P.2d 687, 695 (2000).

We also emphasize our conclusion here in no way affects this Court's prior holdings on the general validity of sentencing enhancement provisions. *See e.g. State v. Nilson,* 364 N.W.2d 532 (S.D.1985)(sentence as a habitual criminal is not a new jeopardy or additional penalty for an earlier crime but a stiffened penalty for a later crime). Again, our cases in that regard have not involved the sort of retroactive alteration of a defendant's status that is present here.

children[,]" our Legislature in recent years has revised the laws pertaining to sex offenses. *Meinders*, 2000 SD 2 at ¶ 29, 604 N.W.2d at 260 (citing *State v. Bonner*, 1998 SD 30, ¶ 28, 577 N.W.2d 575, 583). *See also State v. Olvera*, 191 Ariz. 75, 952 P.2d 313 (Ariz.Ct.App.1997) (not ex post facto violation when amended statute increased number of crimes constituting felonies, as overview of legislative scheme showed intent to restrict firearm possession to protect public rather than punish for past offenses).

[¶ 20.] The majority relies on *U.S. v. Davis*, 936 F.2d 352 (8th Cir.1991). Many courts examining *Davis* have either sharply distinguished its holding or disagreed outright with its rationale. A most recent example is the Nebraska Supreme Court's decision in *State v. Peters*, 261 Neb. 416, 622 N.W.2d 918, 924 (2001)(upholding statute against allegation that law prohibiting felons from possessing firearms constituted ex post facto law, the court said, "*Davis* is neither persuasive nor applicable....")

*See also U.S. v. O'Neal*, 180 F.3d 115, 124–25 (4th Cir.1999) (disagreeing with *Davis* ); *Forster v. Pierce County*, 99 Wash.App. 168, 991 P.2d 687, 696 (2000)(disagreeing with *Davis* to extent that it found Minnesota law applied to past conduct); *People v. Mills*, 6 Cal.App.4th 1278, 8 Cal.Rptr.2d 310, 314–15 (1992); Hand v. State, 107 Nev. 577, 816 P.2d 468 (1991); *People v. Tice*, 220 Mich.App. 47, 558 N.W.2d 245, 246–47 (1996); *Dodson v. Commonwealth*, 23 Va.App. 286, 476 S.E.2d 512, 516 (1996). *Davis* is a minority decision and should be limited to its peculiar facts.

[¶ 21.] I respectfully dissent.

[¶ 22.] MILLER, Chief Justice, joins this dissent.